## EAMES v. H. B. CLAFLIN CO.

### In re MANTINDALE et al.

(Circuit Court of Appeals, Second Circuit. March 14, 1916.)

No. 146.

1. RECEIVERS ☞198(1)—COMPENSATION—AMOUNT—DISCRETION OF COURT.

Receivers are entitled to a fair and reasonable compensation for the services rendered, to be fixed by the court appointing them after considering the nature of the matters administered, the amount involved, the complications attending it, the amount of the bond, the time, labor, and skill needed and expended, the degree of success under all the circumstances, the fidelity to details, and the promptness in accounting, and to be determined on the compensation for similar services in the performance of official duties, rather than in private business transactions, and

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in consideration of the value of the services rendered, not generally, but with reference to that trust.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 392–395; Dec. Dig. ☞198(1).]

2. APPEAL AND ERROR ☞955—RECEIVERS ☞198(2)—DISCRETION OF COURT—COMPENSATION OF RECEIVER.

The compensation allowed a receiver is within the discretionary power of the lower court, which ordinarily has better knowledge of the controlling circumstances than an appellate tribunal can have, and will not be reversed, where there are no facts which show that the court abused its discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3822; Dec. Dig. ☞955; Receivers, Cent. Dig. § 396; Dec. Dig. ☞198(2).]

3. RECEIVERS ☞198(2)—COMPENSATION—AMOUNT.

An allowance by the District Court of $33,000 as compensation to each of two receivers of a large mercantile corporation, of which the assets exceeded $55,000,000 and the liabilities $47,000,000, exclusive of capital stock, where the receivership lasted eight months, during which assets exceeding $30,000,000 passed through the hands of the receivers, whose services were efficient and satisfactory in trying circumstances, is not so low as to show an abuse of discretion, though the creditors advised the court that they would not object to an allowance of $50,000 to each of the receivers.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 396; Dec. Dig. ☞198(2).]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by John C. Eames against the H. B. Claflin Company. In the matter of the application of receivers for allowances. From an order of the District Judge, fixing the compensation of the receivers theretofore appointed, the receivers appeal. Affirmed.

Rushmore, Bisbee & Stern, of New York City (Charles E. Rushmore and Henry Root Stern, both of New York City, of counsel), for appellants.

White & Case, of New York City (Joseph M. Hartfield, of New York City, of counsel), for noteholders' committee, B. W. Jones, b.dder, and Mercantile Stores Corp.

Saul S. Myers, of New York City (Seldon Bacon, of New York City, of counsel), for respondents Belding and others.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. By an order dated June 24, 1914, Joseph B. Mantindale and Frederic A. Juilliard were appointed temporary receivers of the H. B. Claflin Company, of the city of New York, and they at once took possession of the properties of the company and continued in the possession of the same until in February, 1915, they were given authority to continue, manage, and operate the business of the company until the further order of the court.

The failure of the H. B. Claflin Company is thought to have been, as respects the assets and liabilities involved and the world-wide standing and reputation of the house, the largest mercantile failure which ever occurred in this country, or, so far as we know, in any country.

Their balance sheet, as of the date when the receivers were appointed, disclosed assets to the amount of $55,259,523.92 and liabilities to the amount of $47,225,423.58. The excess of the assets over liabilities, exclusive of capital stock, was stated to have been $8,034,100.34. The capital stock amounted to $9,000,000, so that the deficit, including capital stock liability, was $965,899.66.

The estate which passed through the hands of the receivers was very large. It appears that the purchases and sales made by the receivers in the eight months they were in possession amounted to some $15,000,000, and that the upset price fixed on the sale of the business as a whole amounted to over $14,000,000 more. The total amount of assets which passed through their hands is admitted to have been over $30,000,000. Ten days prior to the transfer of the assets by them their miscellaneous disbursements had amounted approximately to $1,585,-000, and they had cash on deposit in the banks to the amount of $6,-339,552.89.

The difficulties which the receivers would have to contend with in ordinary times were enhanced very considerably by the European War, which made the matter of collections in Europe an embarrassing task. There is no question but that the receivers discharged their duties in a very efficient and satisfactory manner. One of the receivers is the president of the Chemical National Bank, and the other is a member of a mercantile house engaged in the same character of business as that of the H. B. Claflin Company. Each of these men enjoys in the business community the highest reputation for integrity and business acumen. The esteem in which they are held is shown by the fact that the creditors practically recommended to the court, or perhaps it would be more accurate to say that they advised the court, that if it saw fit to fix the value of the services of each at the sum of $50,000 such action would be satisfactory to the creditors.

The District Judge, however, has seen fit to enter an order allowing to each the sum of $33,000. In his opinion that was a proper allowance for the services rendered. No doubt he gave a careful and conscientious consideration to the rights of all concerned. Nevertheless the allowance made did not prove to be satisfactory to the receivers, and the matter has been brought into this court on assignment of errors and an appeal. The appellants claim in this court that they should have been paid the sum of $50,000 each.

[1] The receivers are entitled to a reasonable compensation for the services they have performed. The court which appointed them has the right to determine what that reasonable compensation is. In doing so it must exercise its discretion. But while the matter is left to its discretion, it is not at liberty to fix the allowance at more than a fair and reasonable amount. The controlling considerations in such cases have been well stated in 34 Cyc. 472, as follows:

"The considerations that should be controlling with the court in fixing compensation are the nature of the matters administered, the amount involved, the complications attending it, the amount of bond required, the time spent, the labor and skill needed or expended, the degree of success attained under all the circumstances, the fidelity to details, the appreciation evidenced as to the responsibilities of the position, the character of such responsibilities,

the expedition with which the trust has been administered, in view of results reached, and the method, character, and promptness of the accounting, having regard, as a standard, to what is paid for somewhat similar services in the performance of official duties, not the standard in private business transactions. The amount of a receiver's compensation does not depend upon the special qualifications or standing of the person appointed, or the demands made upon his time by private business, nor yet upon the estimates that persons who are themselves in receipt of an ample income may put upon his services from the standpoint they occupy. The value of the services rendered should not be considered generally but only with reference to the trust administered."

[2] Appellate courts are not much inclined to interfere with the exercise of this discretionary power of courts of first instance. The lower court ordinarily has better knowledge of the controlling circumstances than an appellate tribunal can have. As the Supreme Court, speaking through Mr. Justice Bradley, said in Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157 (1882):

"The court below should have considerable latitude of discretion on the subject, since it has far better means of knowing what is just and reasonable than an appellate court can have."

To the same effect is Stuart v. Boulware, 133 U. S. 78, 10 Sup. Ct. 242, 33 L. Ed. 568 (1890), where Mr. Chief Justice Fuller quotes approvingly from Trustees v. Greenough, supra. And see In re Cash-Papworth Grow-Sir, 210 Fed. 24, 126 C. C. A. 604 (1913), where this court, speaking through Judge Lacombe, said:

"The discretion of the District Judge does not come here for review, except where such discretion has been plainly abused, and the record sufficiently indicates upon what state of facts it was that the discretion was exercised."

[3] Our observation has led us to think that courts, when they have erred in fixing the allowances of receivers, have done so by making them too great, rather than too small. In some parts of the country allowances have sometimes been so excessive as to justly provoke severe criticism. It is not often that it is said that a court has underestimated the value of a receiver's services. In all cases of this nature the allowances made should be with a jealous regard to the rights of all concerned. In the particular case the court below conscientiously endeavored to arrive at a just conclusion. There are no facts presented which show that the court has abused its discretion.

Order affirmed.