[No. 2205, Dec. 27, 1918.]

## INDEPENDENT STEEL & WIRE CO. et al v. NEW MEXICO CENT. R. CO.

### APPEAL OF ELY.

[Rehearing Denied Feb. 13, 1919.]

#### SYLLABUS BY THE COURT.

1. In the absence of statute, amount of compensation of receiver of railroad rests in discretion of court appointing him. P. 163

2. The controlling considerations in fixing the amount of compensation of a receiver of a railway stated. P. 163

3. The word "discretion" defined. P. 164

4. The action of the trial court in fixing the amount of compensation of its receiver will be set aside on appeal, only where the facts and circumstances disclose that the court abused its discretion. P. 165

5. An abuse of judicial discretion occurs when the court exceeds the bounds of reason, all the circumstances before it being considered. Evidence examined, and held that court did not abuse its discretion. P. 165

6. The actual disbursements of a receiver outside the scope of the duties incumbent upon him are properly disallowed. Certain items of account of the receiver held properly disallowed. P. 167

Appeal from District Court, Santa Fe County; Hollo-man, Judge.

Action by the Independent Steel & Wire Company and Pittsburg Trust Company against the New Mexico Central Railroad Company. Appeal by Ralph C. Ely, receiver of the New Mexico Central Railroad Company, from an order fixing his compensation as receiver, and disallowing certain items of expenses incurred by him. Affirmed.

FRANK W. CLANCY, of Santa Fe, for appellant.

FRANCIS C. WILSON, of Santa Fe, for appellees.

### OPINION OF THE COURT.

PARKER, J. This is an appeal by Ralph C. Ely from an order of the district court for Santa Fe county in the consolidated cause entitled Independent Steel & Wire Co. and Pittsburg Trust Co. v. New Mexico Central Railroad Company. By the terms of the order the compensation of the appellant, as receiver of the New Mexico Central Railroad Company, was fixed, and certain items of expense incurred by him allowed and other items disallowed.

The appellant was appointed receiver of the New Mexico Central Railroad Company, on December 29, 1914, and continued to occupy that office until September 15, 1917. In the order appointing him it was provided, among divers other things, that he should immediately take possession of all the property of said railroad; run, manage, and operate the same, and use, manage, and conduct such business, in his discretion, in such manner as will in his judgment produce the best results, and to employ and discharge employes of said railroad, "and to make such payments and disbursements as may be needful and proper in so doing." The order further provided for the payment by the receiver of certain specified items of expense, including "all other charges,

expenses, and liabilities that may be incurred by the receiver in managing and conducting said business and operating such railways, or in the discharge of his duties hereunder.'' The order concluded with the reservation that any party in interest may apply to the court for further directions with reference to the property and business, the court reserving the right to modify the order, and in all respects to regulate and control the conduct of the receiver.

From the time of his appointment to the date of the entry of the order herein from which he appeals, no order was made in the premises touching the amount of compensation, final or temporary, of the receiver. On August 17, 1917, the appellant filed with the court a statement of his expenses, amounting to $5,963.07, the same covering the period between the date of his appointment and August 14, 1917. On the same day he also filed a memorandum, the purpose of which was to explain his version of the amount of time he had spent on matters pertaining strictly to the management and operation of the road, and the time he had spent on matters pertaining to the promotion of the sale of the bonds of the railroad, the same including an apportionment of his expenses properly chargeable against either project. The court, after several hearings were had in the premises, in substance and effect found that the appellant had drawn and expended from the funds of the receiver the total sum of $15,851.43; that he attempted to account for $5,963.07, admitting the expenditure of $9,888.35, without accounting therefor; that $2,753.85 of the account stated by the receiver, and no more, was a proper charge against the funds of the receiver, the latter having no right or authority to expend the balance of $3,014.72 in matters concerning the promotion of the sale of the bonds and the obtaining of information and instruction calculated to place the appellant in a position to properly carry on the management of the affairs of the receivership. The court, further, fixed the reasonable compensation of the appellant as receiver at the total sum of $6,770. In consequence of the order of

the court in the premises the appellant was allowed an offset of $9,523.85 against the total amount of his disbursements, viz. $15,851.43, which left him indebted in the sum of $6,327.58.

The appellant urges upon the court three primary propositions. They are (1) that the court erred in fixing the compensation of the appellant at the figure mentioned, it being contended that the amount thereof was shockingly inadequate and unjust under the facts and circumstances of the case; (2) that the court should have allowed the entire account of expenses as the same was presented to it by the appellant, the items aggregating $3,014.72, heretofore referred to, being properly chargeable against the funds of the receiver; and (3) the court erred in making certain findings and in refusing to make additional findings requested by the appellant.

There is no controversy between the parties hereto as to the principles of law applicable to the case. The controversy only arises when the principles are attempted to be applied to the facts of the case.

[1] As the receiver is the officer of the court, created by the court for the administration of the estate in the hands of the court, the amount of compensation to which he is entitled, in the absence of statute fixing the same, is a matter for the determination of the court appointing him, in the exercise of its discretion. High on Receivers (4th Ed.) § 781; 5 Thompson on Corps. (2d Ed.) § 6458; 34 Cyc. 472.

[2] There are numerous considerations to be taken into account in fixing the amount of his compensation. The controlling considerations are laid down in 34 Cyc. 472, as follows:

"The considerations that should be controlling with the court in fixing compensation are the nature of the matters administered, the amount involved, the complications attending it, the amount of the bond required, the time spent, the labor and skill needed or expended, the degree of success

attained under all the circumstances, the fidelity to details, the appreciation evidenced as to the responsibilities of the position, the character of such responsibilities, the expedition with which the trust has been administered in view of results reached, and the method, character, and promptness of the accounting, having regard, as a standard, to what is paid for somewhat similar services in the performance of official duties, not the standard in private business transactions. * * * The value of the services rendered should not be considered generally, but only with reference to the trust administered."

The compensation to be allowed receivers cannot be determined or fixed by an inelastic rule, however, the amount usually depending upon the circumstances of each particular case. High on Receivers (4th Ed.) § 783. Because it is assumed that a railway receiver is charged with greater responsibilities than other receivers generally, or because he is an active receiver as distinguished from a passive one, it is said that railway receivers are entitled to a more liberal rate of compensation than passive receivers, and such compensation will be graduated according to the peculiar duties and responsibilities resting upon them in the control and management of the road. High on Receivers (4th Ed.) § 787. In 4 Cook on Corps. (7th Ed.) § 879, it is said:

"A receiver will be allowed a reasonable compensation for his services. In the case of a railway receiver more than ordinary ability and responsibility are involved, and the court recognizes this fact in fixing the compensation. Each case, however, turns on its own facts. The former tendency of the courts to allow very high compensation has been rebuked by the Supreme Court of the United States, but this does not limit the power of the court to pay sufficient compensation to enable it to obtain a competent receiver. * * *"

[3] To repeat, it has been said that the court appointing the receiver determines the amount of his compensation in its discretion. The word "discretion" has been variously defined. See 2 Words & Phrases (2d Ed.) 64. In State v. Foren, 78 Kan. 654, 97 Pac. 791, it was defined as freedom to act according to one's judgment; liberty to act as a judge should act, applying the rules and analogies of the law to the facts found after weighing and examining the evidence; to act upon a fair

judicial consideration, and not arbitrarily. It was defined in Gaar-Scott & Co. v. Nelson, 166 Mo. App. 551, 148 S. W. 417, citing Black's Law Dict. (2d Ed.) 375, substantially as follows:

"A liberty or privilege allowed to a judge, within the confines of right and justice, but independent of narrow and unbending rules of positive law, to decide and to act in accordance with what is fair, equitable, and wholesome, as determined upon the peculiar circumstances of the case, and as discerned by his personal wisdom and experience, guided by the spirit, principles, and analogies of the law."

In Wharton's Law Lexicon (11th Ed. 476) it is defined as:

"A science of understanding, to discern between falsity and truth, between right and wrong,   *   *   *   and not to do according to their wills and private affections."

Other definitions given by the authorities are: The judge's view of expediency or demands of equity and justice (Wright v. O'Brien, 98 Me. 196, 56 Atl. 647); discreet, circumspect, prudent, exercising cautious judgment (Nash v. Fries, 129 Wis. 120, 108 N. W. 210); action guided by law, based on sound judgment, and inspired by a desire to promote justice (Cargnani v. Cargnani, 16 Cal. App. 96, 116 Pac. 306); and not a mere whim or caprice, but an honest attempt, in the exercise of power and duty, to see that justice is done to establish a legal right (Johnson v. Grayson, 230 Mo. 380, 130 S. W. 673.)

[4] As the court appointing the receiver fixed his compensation in its discretion, having in mind all of the circumstances and facts bearing upon the subject as to what is reasonable compensation in the premises, it is established that the action of the trial court thereon will be set aside on appeal only where the facts and circumstances disclose that the trial court abused its discretion. High on Receivers (4th Ed.) § 783; 5 Thompson on Corps. (2d Ed.) § 6458; Eames v. H. B. Claffin Co., 231 Fed. 693, 145 C. C. A. 579.

[5] An abuse of discretion is said to occur when

the court exceeds the bounds of reason, all the circumstances before it being considered. Sharon v. Sharon, 75 Cal. 1, 16 Pac. 345, 366; Root v. Bingham, 26 S. D. 118, 128 N. W. 132.

The appellant occupied the office of receiver for 985 days, or 2 years and 8 months and 15 days. When he took charge of the railway its physical and financial condition was precarious. He kept the road in operation, making betterments from time to time, so that when he was discharged as receiver the physical condition of the road was about the same as when he took charge of the property. During his incumbency more than $300,000 passed through his hands as receiver. No doubt he suffered disadvantages in administering the property and maintaining the road as a going concern. All these facts, and in addition many other vital matters, were produced on the hearings in this case, and considered by the trial court in determining the amount of his compensation. It would serve no useful purpose to set forth here a resume of the testimony of the appellant or of the evidence appearing in the record generally. Suffice it to say that while the appellant was allowed compensation at the average rate of but $206.10 for a 30-day month, a sum possibly inadequate to compensate a competent person for services rendered in such a matter, still the allowance was not so unreasonable, in our judgment, as to constitute a mark of abuse of discretion. In Cake v. Mohum, 164 U. S. 311, 17 Sup. Ct. 100, 41 L. Ed. 447, the court refused to interfere with the discretion of the trial court fixing the compensation of a receiver, although it remarked that if the question were an original one it might have fixed the receiver's compensation at a less amount. The question is not whether the appellate court believes the amount of the compensation fixed is precisely what the receiver should have been allowed, but whether the action of the trial court exceeds the bounds of reason, all the circumstances being considered by the court. We hold that there is nothing unreasonable in the action of the trial court in the premises, and that no abuse of discretion in fixing the receiver's compensation

is consequently disclosed. For that reason the action of the court in fixing said compensation in the sum mentioned is final here, and is not to be disturbed.

The next proposition involves the action of the trial court in disallowing certain items in the expense account filed by the receiver. As we have heretofore shown, his account totaled $5,963.07, all of which he asserted was properly chargeable against the receiver's funds. Of this amount the trial court disallowed $3,014.72. The twelfth finding of the trial court is to the general effect that the appellant expended the sum last mentioned "in endeavoring to promote the purchase of the bonds and sale of the road, * * * and in endeavoring to properly instruct himself so he would know how to properly operate the road as receiver." The trial court further found that the expenditure of that sum of money by the receiver was wholly unauthorized, and in no way inured to the benefit of the road or its operation. It also found that it was understood between the court and the appellant that no charges or expenses were to be allowed to appellant for his endeavors looking to the promotion of the sale of the bonds of the railroad, the said operation being conducted at the sole risk of the appellant.

[6] The order appointing the receiver authorized him to expend the moneys of the receiver for charges, expenses, and liabilities incurred in "managing and conducting said business and operating such railroads or in the discharge of his duties hereunder." The order to this extent is without any ambiguity. The appellant must have known that his business was to manage and operate the railroad, and in order to do that he would necessarily incur expenses. He must have known that, so far as the legitimate expenses in managing and operating the road were concerned, the order protected him, for it gave him ample authority in advance of the accruing of such expenses to pay the same, but it gave him no authority to expend the money in his hands in matters, incidents, or things not strictly having to do with the

management and operation of the railroad. In High on Receivers (4th Ed.) § 392, it is said:

"The duties of the receiver of a railway, intrusted with the management and operation of the road, being very different from and far more responsible than those of a passive receiver, appointed merely to collect and hold money, a somewhat wider discretion is allowed him in the matter of expenditures necessary to operate the road. And it may be said in general that all outlays made by him in good faith, in the ordinary course of the business of the road, with a view to advance and promote its interests, and to render it profitable and successful, may be allowed him in passing his accounts."

In 5 Thompson on Corporations (2 Ed.) § 6441, it is said:

"The actual disbursements of the receiver, prudently made or incurred in the care and management of the trust property, are entitled to payment as current expenses.   *   *   *"

In Cowdrey et al. v. Galveston, etc., R. R. Co., 93 U. S. 352, 23 L. Ed. 950, Mr. Justice Field held that the expenses of the receiver incurred in defeating a subsidy of the city of Galveston to aid the construction of a road parallel with the one in the hands of the receiver, were not properly chargeable against the funds of the receiver, saying:

"It was no part of the receiver's duty to interfere with the construction of a parallel line of railway, or to attempt to defeat any contemplated aid for such an enterprise. The proposed line may have been of great importance to the public, and necessary to the prosperity of the city, though it might possibly diminish the future earnings of the company whose road was in his charge. At any rate, as an officer of the court, the receiver should not be allowed to determine the question of its importance,   *   *   *   and, acting upon such determination, to appropriate funds in his custody to aid or defeat the measure, without sanctioning a principle which would open the door to all sorts of abuses. A receiver is not authorized, without the previous direction of the court, to incur any expenses on account of property in his hands beyond what is absolutely essential to its preservation and use, as contemplated by his appointment."

This case and doctrine cited is based upon the theory that the receiver is appointed for a definite and specific purpose, and that, whether the grant is specific or not,

he is entitled to expend such of the trust funds as may be necessary in actually performing the duties incumbent upon him as such receiver, although a limitation upon the doctrine is made by many courts, that if the outlay involves a large amount of money the permission of the court must be first obtained. The limitation is immaterial here. Here the receiver's authority with reference to outlays was limited, by the order of the court appointing him, to the management and operation of the road and the discharge of his duties as receiver.

The major part of the items, if not all of them, disallowed by the court, were incurred in journeys by the receiver from Santa Fe, his headquarters, to various cities and towns in the United States. He testifies that those journeys were prompted by his desire to sell the bonds of the railroad. It appears that on some of those journeys he took side trips, to Erie and other places, to transact business actually connected with the management of the road. The evidence disclosed that the appellant was very active in attempting to promote the sale of the bonds of the railway, and that comparatively large sums of money were spent by him in his endeavors in this respect. While it may be true that he was also obtaining information and instruction tending to better circumstance him in managing the affairs of the road in his hands, the evidence establishes that the expense of most, if not all, of such journeys, excepting those clearly appearing to have been made in the interest of the management of the road, were improperly charged against the funds of the receiver. He was not appointed with power to negotiate the sale of said bonds, and no such authority was even impliedly or inferentially granted by that appointment. His duties lay in the direction of the maintenance and operation of the road. The selling of the bonds of the company, admitting for the purpose of argument that such sale would prove advantageous to the interest of the road, was not the business of the receiver.

There is evidence in the record indicating that the

judge who appointed the appellant as receiver gave the latter to understand, in conversation with him, that any expense the receiver incurred in matters looking to the sale of the bonds of the road were not to be charged against the funds of the receiver. This is either immaterial, because the order appointing the appellant gave him no such power, or it constitutes sufficient evidence to sustain a finding thereon by the trial court.

We have examined the statement of the disbursements of the receiver with a view of determining the manner in which the trial court arrived at the sum allowed the receiver as proper expenses against the funds. We have also examined the evidence with reference thereto. We are unable to say how the court arrived at that figure, it appearing to us that the court allowed more to the appellant as disbursements than it might have allowed had it so desired.

The eighth finding of the court, to the general effect that no evidence was introduced to show the necessity or purpose of drawing $9,888.35 by the appellant as receiver, is said to be somewhat inaccurate. It is true it is inaccurate in that the appellant admitted that he drew the money to defray his living expenses, but the finding is entirely immaterial, for appellant does not deny that he should be charged personally with that sum.

Findings numbered 11, 12 and 22 are also attacked by the appellant on the ground that no evidence supports the same. Those findings are wholly immaterial to the propositions of law we have determined in this opinion, and consequently no discussion of them is deemed necessary. The attack on the thirteenth finding is subject to the same remark. It has to do with the proposition that the attempts to sell the bonds of the road were outside the business of the receiver, a subject which we have heretofore discussed. Certain findings were made by the trial court which were wholly foreign to the merits of the case presented here, but probably germane to the issue as to whether the appellant ought to be removed as receiver.

Some of those findings reflected upon the integrity of appellant. We have examined the brief of the appellant concerning all of these matters. All we need say is that those findings and proposed findings are immaterial to the issues presented here.

For the reasons stated, the judgment of the trial court will be affirmed, and it is so ordered.

HANNA, C. J., and ROBERTS, J., concur.