181 P.2d 798

**WILLIAMS v. WALLER.**

No. 4984.

Supreme Court of New Mexico.

June 9, 1947.

A. T. Hannett, of Albuquerque, and Mather M. Eakes, of Farmington, for appellant.

Iden & Johnson and James T. Paulantis, all of Albuquerque, for appellee.

McGHEE, Justice.

Appellee recovered judgment for breach of contract for the drilling of an oil well and for conversion of parts of the drilling machinery. We will refer to the parties as they appeared in the trial court.

Lee Burns, a drilling contractor, had contracted to drill a well for plaintiff on a government permit in San Juan County and the defendant had been employed by him. Burns had given plaintiff a mortgage on a drilling rig, supposedly the one on the lease, for money advanced to him. When he reached a depth of 320 feet he abandoned the contract as well as his drilling equipment and left the country, owing both the plaintiff and defendant. Plaintiff and defendant then agreed that defendant would take the equipment and drill the well to 1000 feet, plaintiff to furnish $700 to be used for expenses and the defendant receive as his compensation the drilling rig or equipment, which they both thought belonged to Burns and was the equipment on which Burns had given plaintiff a mortgage. She says she later learned this was her rig and Burns had never owned it. Plaintiff had a written contract drawn by her attorney and both signed it. It reads as follows:

"It is hereby agreed between Ada Williams, party of the first part, and Jack Waller, party of the second part, as follows:

"Party of the second part agrees to drill the well on the lease of party of the first part in San Juan County, New Mexico, to a depth of one thousand (1,000) feet from the present depth of the well which is approximately three hundred twenty feet (320), cost of which not to exceed Seven Hundred ($700.00), and party of the first part agrees to advance the sum of Seven Hundred Dollars ($700.00) to pay for the cost of drilling said well to said depth of one thousand (1,000) feet.

"Party of the first part further agrees that upon party of the second part drilling said well to said depth of one thousand (1,000) feet, as provided in this contract,

that party of the first part will at such time release the mortgage which she now holds on the rig now located at said well, which said mortgage was heretofore given to party of the first part by Lee Burns.

"It is mutually agreed that in the event of a dry hole that the rig is not to be moved until the well is capped according to government regulations, and in the event oil is discovered in commercial quantities that the casing now at the well will be properly placed in the hole before the rig is moved. The expense of setting of such casing to be paid by party of the first part.

"In witness whereof, the parties have hereunto set their hands this 18th day of September, 1943."

It will be noted it omitted the only consideration the defendant was to receive, which was the drilling rig and equipment.

Following the execution of the contract the defendant began drilling operations. In December he discovered that no mention had been made of the consideration he was to receive, and after talking with the plaintiff in San Juan County they had a new contract prepared there by his attorney setting out the true contract and he also had prepared a bond from defendant to plaintiff guaranteeing that he would fulfill his contract. The plaintiff took the papers to her lawyer in Albuquerque and on his advice refused to sign it. Her attorney wrote the defendant's attorney of her action, saying, among other things: "when he shows some disposition to meet his obligations it will be time enough for Mrs. Williams to consider what she will do for Mr. Waller," and advising, in effect, that they were ready for a law suit. The defendant went ahead with the drilling, although he made slow progress.

On July 1, 1945, at a depth of 940 feet, the defendant rented a Fort Worth Spudder, and moved it in to complete the well, as the equipment he had been using was too light for such depth. He was ready to start drilling when he received a copy of a letter to plaintiff from the District Engineer of the United States Geological Survey to shut down the well until she got a new lease, and stating her lease had expired June 12, 1944. On August 31, 1944, the District Engineer gave permission to proceed, subject to his being first furnished with a complete log and other information.

Upon receipt of permission from the District Engineer to resume drilling operations, the defendant began work and had reached a depth of 977 feet when the owner of the Spudder required its removal to a drilling site near Chama and no further work was done on the well.

The plaintiff pleaded the written contract and asked for damages for the breach thereof by the defendant, and for damages for the claimed conversion of some of the

parts from the rig. The defendant answered denying any breach or conversion and pleaded that the contract copied above did not set out the true consideration in that it failed to state he was to get the drilling rig and equipment, and further alleging plaintiff was unable to convey title to the rig. He also filed a cross-complaint asking judgment for the reasonable value of his services. In her answer to the cross-complaint she stated the rights and liabilities of the parties were fixed by the written contract above quoted. No admission that the defendant was to get the drilling rig as his compensation was made by the plaintiff until it was wrung from her on cross-examination. Admittedly, the $700 was for gas, oil and other drilling expenses.

The original agreement was that the defendant would receive as his compensation the drilling equipment clear of the Burns mortgage. Under the contract as signed he would only receive a satisfaction of the mortgage. He might have acquired title from Burns and thus have received a benefit. Later she claimed this rig and equipment were her own property and had never been owned by Burns. At the request of the plaintiff, the court found this property had been purchased by her and rendered judgment against the defendant for the conversion of a part of it. Prior to the refusal of plaintiff to execute a contract embodying the real consideration it might be assumed the true consideration had been omitted by mistake, but not after the letter of her attorney dated December 10, 1943, to the defendant's attorney, which reads:

"Mrs. Ada Williams was in the office today and exhibited to me a proposed new contract between Mrs. Williams and Jack Waller.

"I have advised Mrs. Williams not to sign this agreement.

"Sometime ago Mrs. Williams and Mr. Waller entered into a written contract, which Mr. Waller has violated in every respect, and in addition thereto appears entirely lacking in good faith and fair dealing with Mrs. Williams. It is my suggestion and advice to Mrs. Williams that she sign no further documents or make any commitments whatever to Mr. Waller until he fulfills his present contract with Mrs. Williams. When he shows some disposition to meet his obligations it will be time enough for Mrs. Williams to consider what she will do for Mr. Waller.

"I consider that she has a very good damage suit against Mr. Waller and it is entirely up to him whether he wants to fulfill his present legal obligation or go to court.

"Please advise promptly, because if Mr. Waller is not going ahead with the drilling, we might as well bring this matter to a head without further waste of time."

There must be mutuality of obligation to support a contract and what it might suit her fancy to pay is not sufficient to support an action for its breach. El Dorado Ice & Planing Mill Co. v. Kinard, 96 Ark. 184, 131 S.W. 460; Van Deren v. Heineke & Co., 122 Kan. 215, 252 P. 459.

The defendant went ahead and completed the well to 977 feet and with the spudder he had rented (on which he, incidentally, paid $1000 rental) would, no doubt, have completed it in a very short time had he not been shut down on account of the failure of the plaintiff to seasonably apply for a renewal of her lease and furnish the copies of log required by the government.

Following the repudiation of her agreement to give the defendant the drilling rig as compensation, she became liable to him for the reasonable value of his services performed with her knowledge and consent, and he is liable to her for any damage she suffered on account of his negligence, if any, and for the value of any property converted by him, and the trial court will permit her to amend her complaint and set up such damages.

After an examination of the record we feel that a number of the findings of fact on the main issue of breach of contract, as well as on the issue of conversion,

were erroneous and that there should be a complete new trial of the case.

The judgment of the district court will be reversed and the case remanded with instructions to grant the defendant a new trial, and it is so ordered.

BRICE, C. J., and LUJAN, SADLER, and COMPTON, JJ., concur.