244 P.2d 540

**J. R. WATKINS CO. v. EAKER et al.**

**No. 5472.**

Supreme Court of New Mexico.

May 14, 1952.

Archer & Dillard, Artesia, for appellant and cross-appellees.

George L. Reese, Sr., Roswell, Reese, McCormick, Lusk & Paine, Carlsbad, for appellees and cross-appellant.

McGHEE, Justice.

We will refer to the appellant company as plaintiff, to the appellee and cross-appellant, Charles Wm. Eaker, as the defendant, and the defendants and appellees, Mrs. Amanda Eaker, J. T. Fulton and R. L. House, as the sureties.

The defendant had been ordering and selling the products of the plaintiff under contracts similar to the one involved in this action since 1936, and on August 31, 1945, was indebted to the plaintiff on account in the sum of $4,698.80. On that date the plaintiff and defendant entered into a new contract with the new sureties named above. The material paragraphs of this new contract involved in a determination of this case are:

"3. The Purchaser further agrees to pay the Company its current wholesale prices for the goods and other articles sold to him, as herein provided, and also the prepaid transportation charges thereon, if any, by remitting to the Company each week at least sixty per cent (60%) of the amount received by him from his cash sales, and from his collections on sales previously made, at the time and in the manner and in accordance with the provisions of the weekly record blanks of the Company to be furnished to him; and, at the expiration or termination of this agreement, to pay the whole amount therefor then remaining unpaid; or the Purchaser may pay for such goods in cash, less the usual cash discount allowed for such payments; but such payments, or any of them, may be waived or extended by the Company without notice to the sureties herein, and without prejudice to the rights or interests of the Company.

"4. If the Purchaser shall not pay cash for said goods and other articles so sold and delivered to him, and the payments at the time and in the manner hereinbefore provided are insufficient to pay therefor, or if the Purchaser shall fail to pay on the indebtedness expressed herein, amounts satisfactory to the Company, from time to time during said term, the Company may, in its discretion, thereafter either limit the sales herein agreed to be made, or from time to time suspend the same, or require cash with each order, or cash upon delivery, until such indebtedness is, or such indebtednesses are, paid, or reduced, as the Company may require.

"9. It is also mutually agreed that this is the complete, entire and only

agreement between the parties, and that it shall not be varied, changed, or modified in any respect except in writing executed by the Purchaser and by an officer of the Company, and that either of the parties hereto may terminate this agreement at any time, if desired, by giving the other party notice thereof in writing by mail.

"10. The Purchaser promises to pay the Company, at Winona, Minnesota, from time to time, after thirty days from the date of acceptance of this agreement, in amounts satisfactory to the Company, the indebtedness he now owes the Company, and agrees, at the expiration or termination of this agreement, to pay any balance thereof then remaining unpaid, payment of which indebtedness is hereby so extended.

"11. The Purchaser and the Company, for the purpose of settling and determining the amount of the indebtedness now owing from the Purchaser to the Company, hereby mutually agree that the said indebtedness is the sum of Forty Six Hundred Ninety Eight and 80/100 ...H-I-G...W-B... Dollars, which sum the Purchaser agrees to pay and the Company agrees to receive, and payment of which is extended as above provided."

The contract of suretyship reads:

"In consideration of the execution of the foregoing agreement by the J. R. Watkins Company, which we have read, or heard read, and fully understand and hereby agree and assent to, and its promise to sell, and the sale and delivery by it, to the Purchaser as vendee, of goods and other articles, and the extension of the time of payment of the indebtedness owing by him to said Company, as therein provided, we, the undersigned sureties, do hereby waive notice of the acceptance of this agreement, notice of default or of nonpayment and waive action required, upon notice, by any statute, against the Purchaser; and we jointly, severally and unconditionally promise, agree and guarantee to pay said indebtedness, the amount of which is now written in said agreement, or if not written therein, we hereby authorize the amount of said indebtedness to be written therein; and we jointly, severally and unconditionally promise to pay for said goods and other aritcles, and the prepaid transportation charges thereon, at the time and place, and in the manner in said agreement provided. And we further severally agree that, in case of the death of one or more of us, the undersigned sureties, before the expiration or termination of this agreement, his estate shall continue liable with the surviving surety or sureties for all shipments made to the Purchaser prior to receipt by the Company at Winona,

Minnesota, of written notice by registered mail of such death.

### Sureties Sign Here In Ink

| Name | | Occupation Address |
|------|------|------|
| Mrs. Amanda Eaker | (Seal) | Rooming House |
| J. T. Fulton | (Seal) | Farmer & Ranching |
| R. L. House | (Seal) | Farmer  " |

The plaintiff delivered merchandise to the defendant on credit from shortly after the date of the contract until March 3, 1946, when it refused further credit, and advised the defendant he would thereafter have to send cash with his orders. The defendant continued as such agent without credit until December 5, 1947, when the plaintiff cancelled the contract. During this period the sales of the defendant greatly decreased, and notwithstanding his efforts to get credit for merchandise for which he had large orders from responsible customers, it was denied by the plaintiff. The defendant did not have means or credit to procure the goods elsewhere.

Following the termination of the contract the plaintiff brought suit against Eaker and his sureties for the balance due on the account of $2,956.87. Eaker admitted the correctness of the account but filed a cross-complaint against the plaintiff for loss of profits because of its breach of contract in, as he said, wrongfully denying him credit when the plaintiff knew he could not purchase like merchandise elsewhere because of his financial condition. The sureties pleaded they were relieved of liability because of the breach by the plaintiff of the contract in that it granted Eaker credit for only six months when the contract extended over a period of forty months, thus preventing Eaker making sufficient money to pay the account in full.

The plaintiff's first claim of error is the denial of its motion for judgment on the pleadings, which was based principally on the admission of the correctness of the account, plus the execution of the contract by the defendant, and the contract of suretyship by the other defendants. It claimed its decision to withhold credit and cancel the contract at its pleasure could not be questioned by any defendant. For reasons which will be later stated, the motion was properly denied.

The case was heard before a jury but at the conclusion of the testimony the trial court held there was no issue to submit to it. It granted the motion of the plaintiff for judgment for the amount due on the account, held the breach of the contract by the plaintiff discharged the sureties, but declined to submit Eaker's claim of damages to the jury. The trial court stated Eaker's testimony in support of his claim of damages was too vague and speculative to support a verdict in his favor.

The plaintiff has appealed from that part of the judgment denying it recovery against the sureties, and Eaker has appealed from the part of the judgment denying him recovery for loss of profits.

The plaintiff rested its case on the itemized account attached to its complaint, which, as above stated, was admitted to be correct, and offered no testimony or other proof. It admits the refusal of credit after March 3, 1946, but seeks to justify it principally under paragraph 4 of the contract, saying it had the right at any time to discontinue the granting of credit and its right to do so may not be questioned by Eaker or this Court.

We had this question before us in Atma v. Munoz, 48 N.M. 114, 146 P.2d 631, 633, where a landlord had declared the cancellation of a farm lease which contained a provision if the farm was not operated in a manner satisfactory to the plaintiff it might forthwith be terminated by her, and in such event the lessee was to have no right of any sort or description in or to the crops on the premises. The lessor did not testify in the case but her husband gave testimony the crops were not being properly cultivated. It was there claimed the lessor had the absolute right of termination for any reason satisfactory to her. After a citation of authority reflecting the opposing views of a number of cases, it was stated:

"It is the majority rule, which we adopt, that a promise by one party to a contract to perform on his part to the satisfaction of the other party is binding; but the dissatisfaction must be real and in good faith. (Citing cases.)"

Following a recital of the testimony of the husband of the lessor that he looked after his wife's affairs and that the operation of the farm was not satisfactory to him, we stated:

"This is the only testimony in the record regarding any dissatisfaction with the manner in which appellant cultivated the crops. The dissatisfaction of her husband was totally immaterial; it was appellant's real, good faith dissatisfaction that must have been proved; and her honest judgment that must have been exercised, not that of her husband, although he may have been looking after her business affairs."

Here we have no testimony whatever of the reason for the refusal to extend the credit provided for in the contract. Eaker, so far as the record discloses, was complying with the provision that he must remit to the plaintiff 60% of the amount of his sales and a like percentage of his collections. In fact the record shows that in 15% of the time the contract was to run he had not only paid for his goods delivered but had paid off 25% of the old indebtedness. It is argued in the brief the account shows Eaker had sent the plaintiff a number of bad checks. It is true it shows a number of charge entries designated "CHK PRO" followed by a sum, but there is no testimony

these items represent protested checks. Assuming, however, that they do prove Eaker sent it bad checks, we still lack evidence that dissatisfaction over such items was even a contributing cause of the plaintiff refusing further credit. The plaintiff also points to charges for "Ins." which it is argued might represent checks returned for insufficient funds. All are for amounts of less than two dollars and may well have been for insurance. The plaintiff could have given us evidence on the points but instead of doing so stood on its claim its act of refusing credit was a matter within its discretion which it need not justify. Such may be the law in some jurisdictions, but not in New Mexico.

▮ The finding in effect of the trial court that credit was wrongfully withdrawn from Eaker and his business so reduced that he could not continue it is sustained by the record.

The plaintiff still contends this would not discharge the sureties; that its action in the premises was really of benefit to them in that Eaker's account was not increased, thereby relieving the sureties of an additional burden. Authorities are cited which it is claimed call for holding the sureties.

The contract between the plaintiff and Eaker was made a part of the contract of suretyship. The plaintiff changed the contract from one of sales on credit to Eaker to one for cash, well knowing he was because of his financial condition unable to buy goods elsewhere, thus greatly lessening his ability to pay the old indebtedness.

▮ It is well settled in New Mexico that a surety is liable only for the performance of the contract for which he becomes surety, and that any alteration thereof discharges such surety. Morgan v. Salmon, 18 N.M. 72, 135 P. 553, L.R.A. 1915B, 407. In Lyons v. Kitchell, 18 N.M. 82, 134 P. 213, 214, Ann.Cas.1915C, 671, the liability of a gratuitous surety, as we have here, is discussed. It was there contended as the sureties could not have been harmed by an alteration in the contract, they, therefore, would not be discharged from liability. The Court stated:

"* * * This contention, however, cannot be sustained, for a noncompensated surety derives no benefit from his contract, and his object is generally to befriend the principal. In such cases the consideration moves to the principal, and, of course, he could be held upon an implied contract; but the surety is only liable because he has agreed to become so. He is bound by his agreement, and nothing else. No implied liability exists to charge him. He is under no normal obligation to pay the debt of his principal. Being thus bound by his

agreement alone, and deriving no benefit from the transaction, he is a favorite of the law, and has a right to stand upon the strict terms of his obligation. To charge him beyond its terms, or to permit it to be altered without his consent, would be not to enforce the contract made by him, but to make another for him. Brandt, Suretyship & Guaranty, vol. 1, § 107. 'And a discharge will be created by a departure from the terms of the contract respecting payments, though no injury is shown.' Welch v. Hubschmitt Co., 61 N.J.Law, 57, 38 A. 824.

"It will thus be seen that it is the deviation from the terms of the contract that operates to release the surety, and not the injury or damage done by such departure. * * *"
See also Pacific Nat. Agr. Credit Corporation v. Hagerman, 39 N.M. 549, 51 P.2d 857, 101 A.L.R. 1301.

■ Much is said in the briefs about the cancellation of the contract within two years from its date instead of allowing it to run for the full period of forty months. We have already shown the sureties were released by the wrongful withdrawal of credit, and as the testimony of Eaker as to claimed loss of profits did not go beyond the cancellation date, that feature becomes immaterial and it will not be further discussed.

We turn now to the claim of Eaker that the trial court erred in refusing to submit the question of his damages to the jury. It was his claim he had an established business which was expanding and profitable, especially in the sale of medicated stock salt to people engaged in the livestock business. The reason for such refusal was, as above stated, that the evidence was too speculative, remote and based on surmise.

■ It is well settled that where a legal right to such damages exists, the fact they may not be computed with exact mathematical certainty does not justify the failure to submit the issue to the jury. De Palma v. Weinman, 15 N.M. 68, 103 P. 782, 24 L.R.A.,N.S., 423; See also Gonzales v. Rivera, 37 N.M. 562, 25 P.2d 802; Nichols v. Anderson, 43 N.M. 296, 92 P. 2d 781; and Southwest Battery Corporation v. Owen, 131 Tex. 423, 115 S.W.2d 1097, 1099, wherein it is said:

"* * * Where, as here, it is shown that the business was a going concern, and was making a profit, when the contract was breached, such pre-existing profit, together with other facts and circumstances, may be considered in arriving at a just estimate of the amount of profit which would have been made if plaintiff had not breached its contract. * * *"
In Twyman v. Roell, 123 Fla. 2, 166 So. 215, 217, which was an action for breach

of a partnership contract, it was stated:

"The rule is well settled that if there is a yardstick or measure of damages by which prospective profits may be determined and they arise out of a contract in which profit is the inducement to its making, they may be allowed if proven, whether they arise from farming, mechanical, or other contracts. * * *

"Uncertainty of the amount or difficulty of proving the amount of damage with certainty will not be permitted to prevent recovery on such contracts. If it is clear that substantial damages have been suffered, the impossibility of proving its precise limits is no reason for denying substantial damages altogether. (Citing cases.)

"The uncertainty which defeats recovery in such cases has reference to the cause of the damage rather than to the amount of it. If from proximate estimates of witnesses a satisfactory conclusion can be reached, it is sufficient if there is such certainty as satisfies the mind of a prudent and impartial person. (Citing cases.)"

See also Fraser v. Echo Mining & Smelting Co., 9 Tex.Civ.App. 210, 28 S.W. 714.

Eaker had trouble detailing his damages, and while his testimony is not as clear as it should have been, still we believe it is sufficient to sustain a reasonable award in his favor. So believing, we hold the trial court erred in refusing to submit the damage issue to the jury and grant Eaker a new trial where the only issue will be the amount he is entitled to recover as damages.

The judgment will be affirmed as to the amount owing on the account and the release of the sureties, but reversed for failure to submit Eaker's claim of damages to the jury, and then strike a balance between the amount admittedly owing on the account and the sum awarded Eaker by the jury. The defendants will recover their costs, if any, on the appeal.

It is so ordered.

LUJAN, C. J., and SADLER, COMPTON, and COORS, JJ., concur.