Levin and others, Copartners, Appellants, v. Perkins, Respondent.

*January 9—February 7, 1961.*

For the appellants there were briefs by *Godfrey, Godfrey & Neshek* of Elkhorn, and oral argument by *Milton E. Neshek*.

For the respondent there was a brief and oral argument by *R. G. Richardson, Jr.,* of Delavan.

HALLOWS, J.   The trial judge took the view the contract lacked mutuality of obligation under the doctrine of *Pessin v. Fox Head Waukesha Corp.* (1939), 230 Wis. 277, 282 N. W. 582, and *Hoffmann v. Pfingsten* (1951), 260 Wis. 160, 50 N. W. (2d) 369, 26 A. L. R. (2d) 1131, and also was indefinite.  The court gave as its reasons that under the contract the defendant had to continue in business ten years, pay a minimum royalty and buy his ice-cream mix from an

agent of the plaintiffs, pay a royalty per gallon while the plaintiffs had no patent on the mix or the freezer, made no promise to supply the mix or at a fixed price therefor. By the lack of the latter promises, the trial court reasoned the plaintiffs had the power to control the price of the mix and cause the defendant to breach the contract for economic reasons and thus relieve themselves from their contractual obligations.

On the question of mutuality, the court treated the contract as an exclusive buy-and-sell agreement requiring the seller to be bound to sell a definite amount of merchandise at a fixed or determinable price. In the *Pessin Case* we pointed out the plaintiff was not bound to continue in business as a beer distributor or to buy any beer from the brewery and, therefore, the brewery's promise to sell to the plaintiff at least 100 barrels of beer per week was at the most a continuing offer. In the *Hoffmann Case* the plaintiff had a contract for the exclusive distribution of "Old Tanner," a shoe polish. Relying on the *Pessin Case* and *Strauss v. Eulberg Brewing Co.* (1947), 250 Wis. 579, 27 N. W. (2d) 723, this court took the view that Hoffmann's only agreement was his refraining from selling competitive products which was not sufficient consideration and, therefore, the contract lacked mutuality of obligation because in a contract to supply, there must be a corresponding duty to order.

These cases are not controlling. Assuming the franchise agreement was a buy-and-sell arrangement, the leasing of the machine without any cost other than the royalty, which was in the nature of a rental, and the agreement of the plaintiffs to forbear from franchising anyone else in the limited area are independent considerations sufficient to satisfy the requirement of mutuality of obligation. See Anno. "Validity and mutuality of agreement to buy where there is no express agreement to sell," 60 A. L. R. 215, at page 230. The indefiniteness in the contract also arises out of considering it as

essentially a buy-and-sell agreement of the ice-cream mix. We do not so interpret the contract.

The contract expressly provided the defendant agreed to purchase the mix from a specified agent of the plaintiffs in order to maintain a uniformly high quality of the product. While the plaintiffs had no patent on the formula for the mix, it was, as the evidence showed, a more or less trade secret, but whether or not it was a trade secret, it was an ice-cream mix which would produce the quality of the retail product associated with the name "Dari-Delite" and gave to that trade name whatever value it had. If the formula were patented or patentable, the fact would not have enhanced the merits of "Dari-Delite." Many a gourmet's delight is created from an unpatented recipe.

There is no evidence, in fact the evidence is quite the contrary, that the plaintiffs could control the price of mix and thereby release themselves from their obligation by inducing a breach of the contract by the defendant. The agent designated by the plaintiffs was a milk company which was willing to manufacture the mix to the plaintiffs' specifications. We do not construe the contract as giving the plaintiffs the power of price control from the requirement necessitating the defendant to buy ice-cream mix from a source specified by the plaintiffs. The contract stated the purpose of such a requirement and any use of that clause for any other purpose by the plaintiffs would be unjustified. The clause implies the mix would be sold by the dairy company at a reasonable or market price and in the quantity needed by the defendant. The plaintiffs did not reserve the right to determine or fix the price of the ice-cream mix and the defendant did not assume such risk. If the plaintiffs prevented or hindered the performance of the defendant by controlling the price of the ice-cream mix, the plaintiffs would be in breach of the contract. Restatement, 1 Contracts, p. 468, sec. 315. Likewise, the adequate supply

of mix from a designated agency is a continuing condition to the defendant's duty to perform. The impossibility of performance caused by a lack of supply was not assumed by the defendant. We must assume when businessmen negotiate, incorporate the results thereof in writing and call it an agreement that they intended to accomplish something of a benefit to each.

We agree the contract is a harsh one on the part of the defendant, but mutuality of obligation in a bilateral contract does not mean the liabilities of both parties or the benefits accruing must be equal. Neither does a contract lack mutuality of obligation merely because every obligation of one party is not met by an equivalent counterobligation of the other party. The mutuality of obligation means sufficient consideration, *i.e.,* a promise needs consideration to be binding and enforceable. This is elementary. *Jones v. Wixom* (1919), 170 Wis. 314, 174 N. W. 895. A promise of one party to a bilateral contract may support one or more promises of the other party. While both parties must be bound in a bilateral contract so that in case of a breach by either, the other would have a right of action therefor, both parties need not be equally bound or to the same extent or have the same remedy for a breach. 12 Am. Jur., Contracts, p. 608, sec. 114.

The plaintiffs have expressly bound themselves to allow the defendant to use the trade name "Dari-Delite," use certain equipment for the manufacture of an ice-cream product sold under that name, and not to franchise others in a limited area for the term of the contract. The defendant in return agreed to use the name "Dari-Delite," use the freezer exclusively, pay royalties based upon the amount of gallonage of the mix used, order the mix from a specified dairy, and keep the machine in repair. The manifest purpose of these promises was to conduct a business under the name of "Dari-Delite," using a particular ice-cream mix and the equipment to make

the retail product. The trial court pointed out in its decision the contract seemed to be unfair in that the defendant received a second-hand machine whose economic life might not last the period of the lease and the plaintiffs had no duty in that respect because the defendant undertook the duty to repair it. In view of the purpose of the contract, when does the duty to repair stop and the duty to replace begin? The defendant did not agree to replace the machine and, in fact, could not do so or could not secure a different make of machine. The promise of the defendant to repair cannot be performed within the intent of this contract so that he may make a success of his business venture, produce the greatest return in royalties for the plaintiffs, and enhance the value of the trade name "Dari-Delite" unless the machine is capable of being repaired and maintained so as to run efficiently. The existence of such freezer, although not a promise on the part of the plaintiffs, is a condition to the performance of defendant's promise to repair. Restatement, 1 Contracts, p. 376, sec. 262.

The plaintiffs are bound to co-operate when the condition is within their control. The rule is stated in Restatement, 2 Contracts, p. 746, sec. 395, as follows:

"A contractual duty is discharged by the unexcused failure of a condition to occur within the time necessary to create a right to the immediate performance of the duty."

In the record there is some testimony that the freezer was beyond repair and could not be made to work efficiently. Other testimony seems to dispute this. It seems without dispute that an agent of the plaintiff removed part of the machine after the defendant discontinued using it. The findings of fact of the trial court do not cover the issues of whether the defendant discontinued the use of the freezer because it could not be repaired and the plaintiffs failed to supply a freezer which would work efficiently, or whether the defendant discontinued the use of the freezer because he

was tired of paying royalties and was dissatisfied with his bargain. As we analyze the facts, the real issue has not been passed upon by the trial court. Under the circumstances, this court will not determine the issue. See *Olson v. Superior* (1942), 240 Wis. 108, 2 N. W. (2d) 718; *Estate of Curtis* (1948), 253 Wis. 119, 33 N. W. (2d) 193. The defendant also argues the contract is void as in violation of state and federal antitrust acts. This issue likewise was not passed upon by the trial court. Since a reversal is necessary, a determination of these unresolved issues should be made by the trial court.

*By the Court.*—Judgment reversed, and the cause remanded for further proceedings.