577 P.2d 885

**ACME CIGARETTE SERVICES, INC., a New Mexico Corporation, Plaintiff-Appellee,**

v.

**Oliver GALLEGOS, d/b/a Oliver's Bar and Bill Estes, Defendant-Appellant.**

**No. 3086.**

Court of Appeals of New Mexico.

March 28, 1978.

Zenon F. Myszkowski, Marchiondo & Berry, P. A., Albuquerque, for defendant-appellant.

Charles N. Glass, Threet, Threet, Glass & King, Albuquerque, for plaintiff-appellee.

OPINION

SUTIN, Judge.

Plaintiff, Acme, and defendant, Estes, are competitors in the vending machine business. Acme sued Estes for damages because Estes induced one of Acme's contractual customers, Gallegos, to terminate a concession lease with Acme. Thereafter, Estes installed his own vending machines in Gallegos' property. From a judgment for Acme, Estes appeals. We affirm.

On May 17, 1974, Acme and Oliver Gallegos, d/b/a Oliver's Bar, executed an exclusive three-year concession lease for vending machines that Acme installed in Gallegos' bar. Sometime prior to May 9, 1975, Estes and Gallegos discussed the replacement of Acme's vending machines with those of Estes, and a question concerning the validity of the contract between Acme and Gallegos arose. Gallegos then gave his concession lease to Estes who employed a lawyer to determine its validity. The lawyer, selected and paid by Estes, advised Estes that the Gallegos' concession lease was unenforceable. Estes then advised Gallegos that he did not have to keep his agreement with Acme.

Gallegos notified Acme on May 9, 1975 that he was terminating the lease concession and demanded Acme's equipment be removed from his property. Acme complied. Estes then paid Gallegos $1,000.00 and installed his vending machines in Gallegos' property.

Acme sued Gallegos for breach of contract and, in an amended complaint, plaintiff joined Estes, seeking damages from Estes for wrongfully inducing Gallegos to breach his agreement with Acme.

The trial court dismissed Gallegos and held that Acme's only remedy against Gallegos was specific performance. However, the court awarded Acme damages against Estes for tortious conduct in the sum of $8,204.29. These damages were calculated from Acme's proof of lost profits less depreciation, taxes, maintenance, labor, mitigation of damages. The trial court also took into account Acme's losses from the voluntary removal by Acme of a second cigarette vending machine.

Estes raises three points on appeal: (1) The trial court abused its discretion by awarding Acme damages without substantial evidence to support the award; (2) The contract was void for lack of mutuality; and (3) Estes did not intentionally induce a breach of contract.

A. *Lawyers should read and comply with Rule 9(m) on "Statement of Proceedings."*

Before answer is made to Estes' claims, we admonish lawyers once again to read and comply with Rules Governing Appeals. This is a chronic illness. If it continues, this Court may refrain from deciding issues raised on appeal.

Rule 9(m) of the Rules Governing Appeals [§ 21–12–9(m), N.M.S.A.1953 (Repl. Vol. 4, 1975 Supp.)] governs "Statement of Proceedings." It reads in pertinent part:

The statement of proceedings shall contain the following:

(1) A brief summary of such portions of the pleadings and rulings of the court thereon as are necessary to an understanding of the issues material to the review. . . .

(2) If the trial court has made findings of facts, a concise, chronological summary of such findings as are material to the review with appropriate references to the transcript. . . .

Defendant's statement of proceedings does not refer to pleadings nor does it contain a concise, chronological summary of the findings material to review. Not only does it contain evidence and argument, but also, it challenges the failure of the trial court to make findings submitted as well as conclusions of law made by the trial court. Caution and criticism in this regard have been stated by the appellate court. See, cases collected in the concurring opinion of *Trujillo v. Beaty* (Ct.App.) No. 3050, 91 N.M. ——, 577 P.2d 431, decided February 21, 1978. The proper place for matters extraneous to the "Statement of Proceedings" is in the "argument."

B. *The trial court did not abuse its discretion in awarding damages.*

Estes claims the trial court abused its discretion in two respects:

(1) By relying entirely on Acme's Exhibit 2 for proof of damages, and

(2) By entering judgment for Acme when Acme failed to prove an attempt to mitigate damages.

■ "An abuse of discretion is said to occur when the court exceeds the bounds of reason, all the circumstances before it being considered." *Independent Steel & Wire Co. v. New Mexico Cent. R. Co.*, 25 N.M. 160, 165–166, 178 P. 842, 844 (1918). To reverse a trial court, there must be a clear abuse of discretion. *Dunham-Bush, Inc. v. Palkovic*, 84 N.M. 547, 505 P.2d 1223 (1973). Neither of these circumstances exist in the instant case.

*First*, Acme's Exhibit 2 was a computer print-out which depicted both the past and projected profits on each machine installed on Gallegos' property. The trial court found:

12. After allowing for depreciation, taxes, maintenance, labor, and mitigation of damages and disallowing any recovery for losses from the removal of a second cigarette vending machine, Acme established lost profits from the machines at the Gallegos location for the remainder of the contract period in the sum of $8,000.00 [sic] ($8,204.29).

Not only did the trial court rely on Exhibit 2 but the court also heard Acme's zone manager's testimony regarding the computation shown on Exhibit 2. The manager stated that the total projected lost profits, less commission, merchandise and taxes would be $17,980.82, the amount shown on Exhibit 2. This amount was based partially on what the actual profit on each machine had been prior to Gallegos' breach and partially on how well vending machines had been doing at this location. He also testified as to the average of what other comparable businesses in the area were doing and what new businesses would do. The trial court then reduced the above amount by

$9,776.53, of which $1,776.53 was the projected loss on one cigarette vending machine deemed by the court not to have been covered by Gallegos' contract. The court deducted the remaining $8,000.00 for wages, salary, depreciation, and any mitigation that might have resulted had a restraining order been sought against Gallegos. At the close of the case, the court stated that the loss of $8,204.29 was predicated on all the testimony and all of the figures involved.

■ It is well settled that where a legal right to damages exists for breach of contract, and the plaintiff seeks to recover loss of business profits, the fact that the profits may not be computed with exact mathematical certainty does not deny a plaintiff the right to submit the issue of damages to the fact finder. *J. R. Watkins Co. v. Eaker*, 56 N.M. 385, 244 P.2d 540 (1952).

■ Estes, in his dispute over the amount of gross profits lost, relies solely on his analysis of plaintiff's Exhibit 2. This argument cannot defeat the trial court's finding. Its decision was based upon all the plaintiff's evidence. Because there was substantial evidence to support the trial court's finding the court did not abuse its discretion in arriving at the amount of the net profit lost by Acme.

*Second*, Estes contends that the trial court abused its discretion by entering judgment for Acme when Acme failed to prove that it attempted to mitigate damages. Estes argues that Acme did not seek an injunction against Gallegos to prevent him from operating Estes' vending machines, nor did Acme offer evidence showing whether the machines removed were subsequently leased to others or whether they remained in storage.

■ Mitigation of damages is an affirmative defense which the defendant must plead [Section 21–1–1(8)(c), N.M.S.A. 1953 (Repl.Vol. 4)], and the burden of proof is on defendant to minimize the damages. *State ex rel. Freeman v. Sierra County Board of Education*, 49 N.M. 54, 157 P.2d 234 (1945). Estes neither pled mitigation as

an affirmative defense nor introduced any evidence to support the defense. Estes did argue this matter before the court but argument alone does not create an issue on appeal. After argument was made, Estes presented his case. "To preserve a question for review it must appear that a ruling or decision by the trial court was fairly invoked . . . ." Section 21–12–11, N.M. S.A.1953 (Repl.Vol. 4, 1975 Supp.) The burden is on defendant to seek a ruling. *Batchelor v. Charley*, 74 N.M. 717, 398 P.2d 49 (1965); *Entertainment Corporation of America v. Halberg*, 69 N.M. 104, 364 P.2d 358 (1961). No ruling or decision was obtained from the trial court. Estes failed to preserve the question of mitigation of damages for review.

The trial court did not abuse its discretion.

C. *The Gallegos contract was not void due to lack of mutuality of obligation.*

The Gallegos' Exclusive Concession Lease contained this clause:

1. That this Lease is an EXCLUSIVE CONCESSION LEASE giving and granting to the LESSEE (plaintiff) *the right, privilege and option* of installing and operating all legal coin operated electrical phonographs, amusement devices, and cigarette machines, on the above described premises *as the LESSEE (plaintiff) may from time to time determine to be required to best fill the needs and requirements for such machines* at the above described premises. [Emphasis added.]

Estes argues that the agreement does not require Acme to place even one machine in the premises; that the lease does not obligate Acme in any manner. Therefore, due to lack of mutuality of obligation the contract was void. Estes is correct in his interpretation of the contract but he is wrong in his conclusion.

▮ What is meant by "mutuality of obligation?" "The term 'Mutuality of obligation' is merely another way of saying that there must be a valid consideration."

*Keith v. City of Cave Springs*, 233 Ark. 363, 344 S.W.2d 591, 596 (1961); *Levin v. Perkins*, 12 Wis.2d 398, 107 N.W.2d 492 (1961); *Sargent v. Drew-English, Inc.*, 12 Wash.2d 320, 121 P.2d 373 (1942). That is, in a bilateral agreement, a promise of one party may support one or more promises of the other party. Each promise is in need of consideration to be binding and enforceable. This is elementary. *Levin*, supra.

▮ It is also elementary that a contract, which leaves it entirely optional with one of the parties to perform, is not founded on mutual promises. Therefore, the doctrine of "mutuality of obligation" is not applicable. The contract is not binding or enforceable. An optional contract may be enforced, however, when mutuality comes into existence by reason of an executed consideration. It is valid notwithstanding the contract was founded upon the lack of mutuality. *Podesta v. Mehrten*, 57 Cal. App.2d 66, 134 P.2d 38 (1943). In other words, where one party not bound by an option contract accepts the benefits under the contract, this party cannot at the same time avoid the obligation under the contract. *Keith*, supra.

▮ In the instant case, Gallegos had a three year exclusive concession lease. Acme had an option to supply Gallegos with vending machines. Acme exercised the option and in fact supplied Gallegos with the vending machines. Gallegos accepted the benefits of the contract for one year before he notified plaintiff that he would terminate the lease concession. The contract then became valid and enforceable even though the doctrine of "mutuality of obligation" was not applicable.

Defendant relies on *Williams v. Waller*, 51 N.M. 180, 181 P.2d 798 (1947). Here plaintiff and defendant orally agreed that defendant would complete the drilling of plaintiff's well. Defendant would receive as compensation the drilling rig and equipment. Plaintiff, however, had a written contract drawn by her attorney that omitted the only consideration defendant was to receive as compensation. Plaintiff sued de-

fendant on the written contract for damages and recovered. The Supreme Court reversed. The court said:

> There must be mutuality of obligation to support a contract and what it might suit her [plaintiff's] fancy to pay is not sufficient to support an action for its breach. [51 N.M. at 184, 181 P.2d at 800.]

What this language means is this: Where plaintiff and defendant enter into an executory contract in which no consideration was given defendant for his promise to drill a well, the contract is unenforceable. A promise to drill a well needs consideration to be binding and enforceable. In the absence of consideration, no "mutuality of obligation" exists. That plaintiff may have wanted to pay defendant something is not sufficient consideration to establish "mutuality of obligation." Therefore, plaintiff is not entitled to recover damages.

In support of this principle of law, *Williams* cited *El Dorado Ice and Planing Mill Co. v. Kinard*, 96 Ark. 184, 131 S.W. 460 (1910) and *Van Deren v. Heineke & Co.*, 122 Kan. 215, 252 P. 459 (1927).

*El Dorado* supports *Williams* on the concept of "mutuality of obligation," but in fact, the plaintiff did recover. It supports the position of plaintiff in the instant case. The court said:

> It is not necessary in this case to determine whether or not the written contract lacked mutuality at its inception, and was therefore not enforceable because at its inception the appellee had not assumed a fixed obligation on his part, *because he acted thereon and actually made performance thereof up to November 10, 1907 . . . . Where a party originally not bound has executed the contract, the doctrine relative to mutuality does not apply.* [Emphasis added.] [131 S.W. at 462.]

The Gallegos contract was not void due to lack of "mutuality of obligation." It was valid and enforceable.

### D. *Acme proved Estes induced breach of the Gallegos contract.*

Estes claims that Acme failed to prove that Estes intentionally did any wrongful act without justification to induce a breach of the Gallegos contract.

■ It is common practice for an appellant to rely upon all of the evidence most favorable to his position. To resolve an issue of fact on appeal, it is a matter of common knowledge that all evidence most favorable to the appellee governs the disposition of the issue. *Scott v. Transwestern Tankers, Inc.*, 73 N.M. 219, 387 P.2d 327 (1963).

■ The evidence most favorable to Acme is this: Mr. Neely, the zone manager for Acme testified that Gallegos told him "that Bill Estes had give [sic] him $1,000 to put his equipment in and to take ours out, . . . that he was changing companies, that Billy had given him $1,000 to put his machines in." Estes examined the Gallegos lease, discussed with Gallegos the placement of his machines in Gallegos' business, and advised Gallegos that he could ignore the lease. The record also shows that Estes took the lease to his lawyer and paid him to interpret the lease with knowledge that the lease dated May 17, 1974 would not expire until 1977.

The rule concerning liability for interference with contractual relations is well settled in New Mexico. *Bynum v. Bynum*, 87 N.M. 195, 531 P.2d 618 (Ct.App.1975); *Williams v. Ashcraft*, 72 N.M. 120, 381 P.2d 55 (1963); *Wolf v. Perry*, 65 N.M. 457, 339 P.2d 679 (1959). In *Wolf*, the court said:

> The general rule is that one who, without justification or privilege to do so, induces a third person not to perform a contract with another, is liable to the other for the harm caused thereby.

> \* \* \* \* \* \*

A necessary element of the tort of inducing a breach of contract is a showing that the defendant played an active and substantial part in causing the plaintiff to lose the benefits of his contract. There must be some voluntary conduct on the part of the defendant, some overt act which influences the promisor to breach

his contract. [65 N.M. at 461, 339 P.2d at 681.]

Under this rule there was substantial evidence to prove Estes induced Gallegos to breach his contract with Acme. He had no legal or financial interest in Gallegos' business and Estes played an active and substantial part in causing Acme to lose the benefits of its contract. Estes' only challenge to this evidence is that it is not proof of "*intentional doing of wrongful acts* without justification." This proof is not essential. It is essential when "malice" is an element of the tort. "The answer is that malice is not an element of the tort." *Bynum*, supra, 87 N.M. at 198, 531 P.2d at 621. Interference without justification or privilege is sufficient proof. It is wrongful, and when it is wrongful, liability is imposed upon the wrongdoer. *Ashcraft*, supra.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ, J., specially concurring.

LOPEZ, J., concurs.

HERNANDEZ, Judge (specially concurring).

The second part of defendant's first point of error is as follows:

"The trial court abused its discretion by entering judgment for the plaintiff when the plaintiff did not prove that it attempted to mitigate its damages."

Under the doctrine of "avoidable consequences" the injured person has the duty to use reasonable diligence to mitigate damages incurred either from tort or breach of contract. *Mitchell v. James*, 47 N.M. 169, 138 P.2d 522 (1943); *Rutledge v. Johnson*, 81 N.M. 217, 465 P.2d 274 (1970).

Mitigation of damages is an affirmative defense and the burden is on the defendant to show that the plaintiff, by the exercise of reasonable diligence, could have minimized damages. *Kelty v. Best Cabs, Inc.*, 206 Kan. 654, 481 P.2d 980 (1971); *Comfort Homes, Inc., v. Peterson*, 549 P.2d 1087 (Colo.App.1976). Under a general denial defendant can question and counter plain-

tiff's proof of damages, but he cannot seek to show what the plaintiff could have done in the exercise of reasonable diligence to minimize his damages further. Defendant had the burden of affirmatively pleading mitigation of damages and of proving that the plaintiff could have minimized damages by the exercise of reasonable diligence. He did neither.

I agree that plaintiff's contract with Oliver Gallegos was not void for lack of mutuality of obligation. Their agreement, although entitled "Exclusive Concession Lease" was in my opinion one to provide various vending and amusement machines and equipment, that is, a requirements contract. Paragraph 1 reads in part as follows: "That this lease . . . giving and granting to the LESSEE the right . . of installing . . . electrical phonographs, amusement devices, and cigarette machines, on the above described premises as the LESSEE may from time to time determine to be required to best fill the needs and requirements for such machines at the above described premises. . . . During the term of this lease . . . ."

" 'Mutuality of contract' means that obligation rests on each party to do or permit doing of something in consideration of other party's act or promise. . . ." Black's Law Dictionary (Rev. 4th Ed., 1968).

"It is now beyond question that contracts for requirements do not lack mutuality and are enforceable. In every case it is the reasonable expectation by both parties that there will be requirements on which the bargain is grounded." *Locke v. United States*, 283 F.2d 521, 151 Ct.Cl. 262 (1960). See, Uniform Commercial Code, § 50A–2–306, N.M.S.A.1953 (Repl. Vol. 8, pt. 1). Also see, *Gruschus v. C. R. Davis Contracting Company*, 75 N.M. 649, 409 P.2d 500 (1965).