409 P.2d 500

Jeanine Adams GRUSCHUS, Executrix of the Estate of Jack Adams, Deceased, Plaintiff-Appellant and Cross-Appellee,

v.

C. R. DAVIS CONTRACTING COMPANY, Inc., a New Mexico Corporation, Defendant-Appellee and Cross-Appellant.

No. 7642.

Supreme Court of New Mexico.

Sept. 7, 1965.

Rehearing Denied Jan. 17, 1966.

Stephenson & Olmsted, Santa Fe, for appellant and cross-appellee.

Rodey, Dickason, Sloan, Akin & Robb, Robert M. St. John, Albuquerque, for appellee and cross-appellant.

NOBLE, Justice.

Jack Adams Construction Company, Inc., (hereinafter termed Adams), prime contractor for the construction of some ten miles of four-lane concrete highway, sued its subcontractor, C. R. Davis Contracting Company, Inc., (hereinafter termed Davis), for damages occasioned by Davis' failure

to complete its subcontract within the time required by the contract. Davis counterclaimed for damages resulting from Adams' failure to prepare the cement treated base within the tolerances required by the highway department specifications, and for a balance claimed to be due under the subcontract. The court found that Adams was damaged in the sum of $28,000 by Davis' failure to complete the work within the time specified, and that Davis was damaged to the extent of $23,500 by Adams' failure to construct the base within allowable tolerances. Certain other charges and credits were allowed and judgment was rendered against Adams for a balance found to be due Davis. Adams has appealed and Davis has cross-appealed.

The allowance of the "backcharge" against Adams because of extra work performed by Davis in conforming the cement treated base to specification tolerances is attacked on the grounds that (1) there was no agreement to pay for such extra work, (2) Davis was not damaged, and (3) Adams did not breach the subcontract.

Under the subcontract, Adams was obligated, at its own expense, to prepare the cement treated base to within the tolerances and specifications of the state highway department and its acceptance thereof. It was further provided that Adams would have such work done prior to notice to proceed to Davis.

The court found that despite requests, Adams failed to perform the corrective work necessary to bring the cement treated base within allowable tolerances; that Davis graded the cement treated base under the supervision of the highway department; and that such work was necessary to meet their requirements and pass their inspection before Davis could lay the concrete paving. The court further found that when Adams failed to grade the cement treated base to the allowable tolerances, Davis advised Adams that it would be necessary for Davis to perform the extra work and to backcharge Adams for such expense. The reasonable value of grading and preparing the cement treated base by Davis was found to be $23,500.

Relying upon United States for Use and Benefit of Lichter v. Henke Construction Co., 157 F.2d 13 (8th Cir.1946) and Chambless Painting Co. v. J. J. Fritch, General Contractor, Inc., 336 S.W.2d 200 (Tex. Civ.App.1960), Adams argues that Davis is not entitled to recover for the extra work of grading the base to the required tolerances because Adams had not agreed to pay for such extra work. These decisions are easily distinguishable upon their facts. In both Chambless and Henke Construction Co., the subcontract expressly provided that the general contractor would not be required to pay for extra work unless agreed to in writing before the work was done or the change made. The court

in each case held that in view of the express agreement, the subcontractor should either have refused to proceed with the work until the condition was remedied or should have secured a written agreement in advance of doing the extra work. Furthermore, Chambless turned on a finding of fact, presumed to have been found by the trial court and supported by substantial evidence, that no extra work was performed. The instant contract does not contain such a provision.

■ We believe the rule to be that a subcontractor is entitled to recover the reasonable value of extra work necessitated by the contractor's failure to perform his part of the contract, even though there was no express agreement to pay for any extra work. Winston & Co. v. Clark County Const. Co., 186 Ky. 743, 217 S.W. 1027; Charles R. Gow Co. v. Marden, 262 Mass. 545, 160 N.E. 319; Diana Stores Corporation v. M. & M. Electrical Co., 108 So.2d 486 (Fla.Ct.App.1959); Fanderlik-Locke Co. v. United States for Use of Morgan, 285 F.2d 939, 945 (10th Cir.1960).

■ Adams attacks findings that the cement treated base prepared by him did not meet the tolerances required by the specifications; that it was not in proper condition for the laying of the concrete paving thereon; and that the reasonable value of the extra work performed by Davis to permit the base to pass inspec-

tion of the highway department was $23,500 upon the ground that they are unsupported by substantial evidence. He also argues that the denial of contrary requested findings and conclusions constitutes reversible error. It would serve no useful purpose to detail the conflicting evidence on these issues, but it was for the trial judge, as the trier of the facts, to determine the weight and credibility to be given the testimony of witnesses. Zengerle v. Commonwealth Insurance Co. of N. Y., 63 N.M. 454, 321 P.2d 636; Fitzgerald v. Fitzgerald, 70 N.M. 11, 369 P.2d 398. A review of the record discloses that the trial judge resolved this conflict, and that his findings are supported by substantial evidence and, therefore, cannot be disturbed. The fact that there was contrary evidence which would have supported different findings and conclusions does not permit an appellate court to weigh the evidence. State ex rel. Reynolds v. Lewis, 74 N.M. 442, 394 P.2d 593; Shelley v. Norris, 73 N.M. 148, 386 P.2d 243; Sanchez v. Garcia, 72 N.M. 406, 384 P.2d 681.

■ The court found that Davis actually used 100,265.865 tons of sand and aggregate in preparing the concrete pavement. It appears to be undisputed that 64,897.5 cubic yards of concrete was placed in the pavement by Davis. The highway departments' specifications require 530 pounds of combined sand and aggregate per sack of cement for each cubic yard

of concrete, and likewise require six sacks of cement to each cubic yard of concrete. Simple multiplication demonstrates that 3180 pounds of the combined sand and aggregate was necessarily used in each cubic yard of concrete used in the pavement. By reason of the foregoing, it appears that the computation used as the basis of the trial court's finding of the quantity of sand and gravel actually consumed in mixing the concrete pavement is in error and requires that the cause be remanded for a proper finding on this issue.

 Notwithstanding what the correct tonnage of sand and aggregate actually used by Davis was, Adams contends, and it appears to be conceded, that he delivered to the Davis stockpile an amount in excess of that actually used in the construction of the highway. The contract required Adams, for a net price of $3.10 per ton, to furnish Davis all concrete aggregate and sand material "necessary to the preparation of said concrete pavement, * * *." We think the agreement amounts to a "requirement contract" within the meaning of § 50A–2–306(1), N.M. S.A.1953, which reads:

"A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded."

Whether Adams in good faith delivered a quantity of the material which was not unreasonably disproportionate to the normal requirements for the purpose for which it was delivered is a question of fact necessary to the determination of the issue upon which no finding was made. Upon remand, a finding must be made upon this issue.

The complaint sought actual damages for Davis' failure to complete its subcontract within the sixty working days specified in the contract, or, in the alternative, for liquidated damages in accordance with the contract provisions. The court found that Davis took 108 working days, and that Adams was entitled to actual damages in the total sum of $28,000.

 Davis contends that there is no substantial support in the evidence for findings that he did not complete his subcontract within the time required and that the delay in completion was caused by Adams' failure to prepare the cement treated base within specification tolerances. It is also asserted that his contrary requested findings and conclusions should have been adopted. A review of the record convinces us that such contentions are without merit. See State ex rel. Reynolds v. Lewis, supra.

We agree, however, that Adams' recovery for Davis' delay in completing his subcontract is limited to the liquidated damages provided by the agreement. The contract specified that:

"6. * * * Adams shall have the right to deduct from any monies due Davis, the sum of $100.00 per day for each working day elapsing between the time agreed upon for the completion of said work and the actual date of completion thereof, as liquidated damages for the breach hereof."

If the liquidated damage clause is one which properly provides for liquidated damages, it fixes any recovery for damages for a breach at that amount, and the injured party can recover no more, even though his actual damages may exceed the agreed sum, as the court found to be a fact in this case. On the other hand, his recovery cannot be diminished by showing that his actual loss was less. Learned v. Holbrook, 87 Or. 576, 171 P. 222; McCormick on Damages, § 152. See Schutt Realty Co. v. Mullowney, 215 Minn. 340, 10 N.W.2d 273.

There would seem to be no sound reason why persons competent and free to contract may not agree on the amount of liquidated damages for failure to complete a contract within a specified time to the same extent as they may contract on any other subject, or why their agreement in this respect, when fairly and understandingly entered into, with a view to just compensation for an anticipated loss, should not be enforced. See Gustav Hirsch Organ., Inc. v. East Kentucky R. E. Coop. Corp., 201 F.Supp. 809 (E.D. Ky.1962); Manufacturers Casualty Ins. Co. v. Sho-Me Power Corp., 157 F.Supp. 681 (W.D.Mo.1957). As a general rule, enforcement of such a clause will only be denied when the stipulated amount is so extravagant or disproportionate as to show fraud, mistake or oppression. The standard, however, is not furnished by plaintiff's actual loss or injury, but by the loss or injury which might reasonably have been anticipated at the time the contract was made. Gustav Hirsch Organ., Inc. v. East Kentucky R. E. Coop. Corp., supra; Banta v. Stamford Motor Co., 89 Conn. 51, 92 A. 665; McCormick on Damages, § 150.

Since there was no evidence that the amount of the liquidated damages was an unreasonable estimate at the time the subcontract was made, we think the trial court erred in not applying the liquidated damages clause.

That portion of the judgment awarding Davis $23,500 is affirmed, and that portion of the judgment awarding Adams $28,000 is reversed and remanded for further proceedings not inconsistent with this opinion. Upon remand, the trial court is directed to find the amount of sand and aggregate actually used by Davis, and whether Adams

in good faith delivered a quantity of sand and aggregate which was not unreasonably disproportionate to normal requirements for the purpose for which it was delivered.

It is so ordered.

CARMODY, C. J., and MOISE, J., concur.