489 P.2d 646

### LOUIS LYSTER GENERAL CONTRACTOR, INC., a New Mexico Corporation, Plaintiff-Appellant,

v.

### CITY OF LAS VEGAS, New Mexico, a municipal corporation, Defendant-Appellee and Cross-Appellee,

v.

### T. E. SCANLON AND ASSOCIATES, a partnership, Third-Party Defendant-Appellee and Cross-Appellant.

### No. 9204.

Supreme Court of New Mexico.

Oct. 8, 1971.

H. E. Blattman, Las Vegas, Charles E. Barnhart, Albuquerque, for appellant.

Zinn & Donnell, Santa Fe, for appellee and cross-appellant Scanlon.

Roberto L. Armijo, Las Vegas, for appellee and cross-appellee City of Las Vegas.

OPINION

STEPHENSON, Justice.

Louis Lyster General Contractor, Inc. ("Lyster") and T. E. Scanlon and Associates, sometimes called Scanlon-Erwin & Associates, both names referring to the same entity and hereafter collectively called "Scanlon," have appealed from a money judgment entered against them in favor of the Town of Las Vegas on account of a structural failure in a sewage treatment facility in this case of many stercoraceous facets. The City of Las Vegas ("the City") has since been substituted for the Town of Las Vegas as a party.

This is the second appeal in this case. See Louis Lyster Gen. Con., Inc. v. Town of Las Vegas, 75 N.M. 427, 405 P.2d 665 (1965) (the "first appeal"). The opinion, which reversed and remanded for a new trial, accorded the parties the right "to amend their pleadings to simplify the same and to eliminate the present errors and confusion as to issues, parties, and the type of relief sought." This has proven a vain hope.

Scanlon asserts that he was not a party at the time of the second trial. This issue is to be resolved by the law relating to pleading. The pleadings here are complex. We will first deal with Lyster's appeal and will defer an exposition of the pleadings, except as they relate to Lyster, until we reach Scanlon's appeal.

Following the first appeal, Lyster filed an amended complaint against the City only, Scanlon being omitted as a defendant, seeking recovery of the unpaid balance on a construction contract. The complaint as amended alleged the structural failure in question to have resulted from an inadequate and improper design by Scanlon as the agent of the City. The City by its answer denied the agency and alleged that the failure was in part caused by Lyster's improper workmanship and failure to follow the plans and specifications.

Lyster, from a time antedating the first trial and the first amended complaint, while Mr. Lyster individually was plaintiff, was

a defendant in a third-party complaint filed against it by the City seeking a money judgment, asserting that it had failed to complete a tray as specified in the contract documents and that it was negligent in the construction of the tray slab, which resulted in its collapse. Lyster does not assert that it was not properly defending this claim of the City.

The issues embodied in all of the pleadings were tried to the court without objection by anyone other than Scanlon. Following trial, findings were requested by Lyster and United States Fidelity & Guaranty Company (U. S. F. & G.), Lyster's surety. The court in its decision found various items of negligence on the part of both Scanlon and Lyster, and that such acts or omissions equally contributed to the structural failure. Judgment was entered against Lyster and Scanlon for various items of damages, including liquidated damages. No judgment was entered against U. S. F. & G. The means of its escape do not appear.

The evidence showed that the contract called for a circular structure forty feet in diameter and thirty feet high of reinforced concrete. Eight feet from the top there was a tray with a four-foot opening in the center. The portion of the structure from the tray upward comprised the upper chamber. A revolving arm driven by an electric motor was designed to revolve slowly over the surface of the tray. In operation, waste material was supposed to enter the structure, find its way onto the tray and then pass through the opening into the lower chamber. The revolving arm was designed to keep the solids broken up and move them slowly to the center.

There was a structural failure of the tray during the time the plant was being tested, as evidenced by a crack around the tray where it joined the outer walls and a dropping of the tray from a point at the end of the structural steel supports which extended seven feet inward from the outer walls. The tray hit the revolving arm, jamming and binding it and the machinery

which moved it, rendering the structure inoperative.

Lyster, in its first four points, attacks certain findings of fact made by the trial court and also, in some instances its failure to adopt findings requested by Lyster. We are bound to view the evidence, together with all favorable inferences reasonably deducible therefrom, in the light most favorable to support the findings. All evidence unfavorable to the findings must be disregarded and no unfavorable inferences will be drawn. Oberman v. Oberman, 82 N.M. 472, 483 P.2d 1312 (1971). We have examined those portions of the record cited by the parties in support of their respective positions.

■ Lyster's Point One is:

"THE COURT ERRED IN REFUSING TO FIND THAT SCANLON'S CONTRACT WITH THE TOWN REQUIRED SCANLON TO PROVIDE A RESIDENT SUPERVISOR FOR THE PROJECT."

This point is abstract and without relevance. Since no causal relationship between the want of a resident inspector and the failure of the structure is suggested, the court's action related merely to evidentiary matters, and the error, if any, was harmless.

Lyster's Point Two is:

"THE COURT ERRED IN ITS FINDING OF FACT NO. 15, TO-WIT, 'SAID CLARIFIER-DIGESTER WAS EQUIPPED WITH AN ALARM SIGNAL WHICH WAS SET TO GO OFF AT ANY TIME EXCESSIVE FRICTION DEVELOPED BETWEEN THE DORR-OLIVER MECHANISM AND THE STRUCTURE, THUS PROVIDING AN OPPORTUNITY TO STOP OPERATION OF THE UNIT FOR INSPECTION AND REMEDIAL ACTION.'"

And its Point Four is:

"THE COURT ERRED IN MAKING ITS FINDING OF FACT NO. 20, TO-WIT: 'THAT AFTER COMPLETING

THE CONSTRUCTION OF SAID CLARIFIER-DIGESTER, LOUIS LYSTER, GENERAL CONTRACTOR, INC., NEGLIGENTLY AND IN VIOLATION OF HIS CONTRACT, ATTEMPTED TO SEED THE SAME WITH RAW SEWAGE AND SLUDGE DURING COLD, INCLEMENT AND FREEZING WEATHER, THEREBY RENDERING IT IMPOSSIBLE FOR THE SEEPING AREA WHICH PERMITTED MATERIAL ON THE UPPER PORTION OF THE UNIT TO SEEP DOWN INTO THE LOWER PORTION OF THE UNIT TO BECOME CLOGGED, FROZEN AND STOPPED; AND THAT SAID CONTRACTOR NEGLIGENTLY FAILED TO CHECK OR DETERMINE WHETHER OR NOT SAID SEEDING MATERIAL WAS IN FACT FLOWING INTO THE LOWER CHAMBER OF SAID UNIT, AND WHETHER OR NOT SAID LOWER CHAMBER HAD BECOME FILLED BEFORE ALLOWING THE UPPER CHAMBER TO FILL UP.' "

We agree with Lyster as to both Points Two and Four. However, since our decision as to them is neither dispositive of the appeal nor significant in the result we reach, it does not seem worthwhile to discuss them further.

■ Lyster's Point Three is:

"THE COURT ERRED IN MAKING ITS FINDING OF FACT NO. 16, TO-WIT, 'THAT, AS DESIGNED BY T. E. SCANLON, SAID TRAY SLAB WAS TO BE CONSTRUCTED WITH CONCRETE WITH REINFORCING STEEL BARS WHICH WERE TO BE PLACED, SET AND TIED-IN IN A PRECISE AND SPECIFIC MANNER.' AND ERRED FURTHER IN MAKING ITS FINDING OF FACT NO. 18, TO-WIT, 'THAT IN CONSTRUCTING SAID CIRCULAR STRUCTURE AND TRAY SLAB LOUIS LYSTER, GENERAL CONTRACTOR, INC., NEGLIGENTLY, AND IN VIOLATION OF HIS CONTRACT WITH THE TOWN OF LAS VEGAS, FAILED TO PLACE SOME OF THE SPECIFIED REINFORCING STEEL BARS IN ACCORDANCE WITH THE PLANS AND SPECIFICATIONS REFERRED TO IN, AND MADE A PART OF, PLAINTIFF'S EXHIBIT NO. 1, THE CONTRACT, WHICH PLANS AND SPECIFICATIONS ARE PLAINTIFF'S EXHIBITS NO. 2 HEREIN.' AND FURTHER ERRED IN REFUSING TO ADOPT THE PLAINTIFF'S REQUESTED FINDING OF FACT VI, TO-WIT, 'THAT LOUIS LYSTER, GENERAL CONTRACTOR, INC., DID CONSTRUCT SAID SEWAGE TREATMENT PLANT IN ACCORDANCE WITH PLANS AND SPECIFICATIONS BY T. E. SCANLON AND ASSOCIATES.' " ·

From an examination of the plans and specifications, it seems to us that the placement of steel was detailed with some specificity and that accordingly the court's Finding No. 16 is sustained by the evidence.

■ The crucial question is whether substantial evidence supports Finding No. 18. Lyster launches its argument and analysis of the evidence by saying that the testimony of both Mr. Lyster and Mr. Scanlon, who have personal interests, would be ignored and the testimony of "the highest qualified expert" is then discussed. This constitutes a bald plea for us to weigh the evidence which we decline to do. Lyster's argument and analysis is forceful and persuasive. From the cold record, we might have made findings different from those made by the trial court, but we are unwilling to depart from our oft announced substantial evidence rule.

Actually, there was an implication from the testimony of Lyster's expert that the steel intended to reinforce and support the tray had been placed by Lyster in a manner at variance with the plans and normal practice. There was considerable testi-

mony from Mr. Scanlon to the effect that this steel had not only been improperly placed, but that such placement was also the cause of the structural failure.

We thus must resolve this point adversely to Lyster. Since the findings attacked are supported by substantial evidence, it follows that it was not error for the court to refuse the contra finding requested by Lyster.

■ In its fifth point Lyster claims that the trial court erred in finding that Scanlon was not the agent of the City and in refusing a requested finding that he was, and in its sixth point that the court erred in declining to impute the negligence of Scanlon to the City.

We do not agree. In the present posture of the case, the doctrines of agency and respondeat superior are without significance and the error, if any, was harmless. Lyster, in its amended complaint, sued the City for the unpaid balance of the contract price on the theory that the proximate cause of the failure was the inadequate and improper design of the structure by Scanlon, who was the agent of the City. City, in its amended answer, denied the agency and affirmatively alleged that:

"* * * the failure was caused, in part, by improper workmanship on the part of [Lyster], and in part, by [Lyster's] failure to do the work in accordance with the plans, specifications and designs * * *."

We have held that the court's findings numbers 16 and 18, together determining that Lyster was negligent and failed in certain respects to follow the plans and specifications, were supported by substantial evidence. Moreover, the court found that Lyster negligently and in violation of his contract placed an excessive amount of grout on the tray, thereby adding to the deadweight that the tray had to support. That finding is not attacked, and is therefore binding upon us.

Lyster has thus been determined to have been at fault by findings either sustained by us or not attacked by it in respects en-

tirely independent of and unconnected with the negligence of Scanlon in the fields of engineering and design (which was found by the trial court to exist and is not now attacked by any party). Lyster cannot impute its own negligence to the City under any application of the doctrine of respondeat superior based upon Scanlon's asserted negligence and agency.

We have no difficulty with proximate cause in regard to Lyster's negligence. No argument is directed to it nor is attack made on the court's finding in regard to it, which states:

"24. That the failure of the clarifier-digester unit resulted proximately from the aforesaid act of negligence of Louis Lyster, General Contractor, Inc., and T. E. Scanlon, and that said acts of negligence were equally contributing factors to said failure."

Thus the concepts of agency and imputed negligence have no role at this juncture in resolution of the issues tendered by the first amended complaint or the answer to it, either as instruments of Lyster's offense or of the City's affirmative defense.

■ Neither can Lyster complain of error as to Scanlon's negligence or the imputation thereof to the City in relation to the latter's third-party complaint against Lyster, upon which the City's recovery against Lyster is predicated, or Lyster's answer thereto.

The third-party complaint (Mr. Lyster, individually, was then the plaintiff and the mentioned pleading added the Lyster Corporation which is now the plaintiff) alleged negligence and failure to follow the plans and specifications on the part of Lyster. Lyster in its answer admitted certain of the City's allegations and denied others, but pleaded no affirmative defenses in general nor, specifically, any defensive matter based upon Scanlon's agency or the imputation of his negligence to the City.

It is true that in the same pleading, Lyster cross-claimed against its co-third-party defendant, Scanlon, alleging the inadequacy of his design. However, the cross-claim is

without significance now because Lyster asserts no claim against and seeks no recovery from Scanlon.

■ Finally Lyster complains of the award of liquidated damages, or at least of the award in conjunction with the other damages we will mention.

As to damages, including liquidated damages, the contract provided:

"7–23: *Time*.

" \* \* \*

"b. *Damages Occasioned by Contractor's Delay*: If the work is not completed in accordance with the foregoing, it is understood that the Owner will suffer damage; and it being impracticable and infeasible to determine the amount of actual damage, it is agreed that the Contractor shall pay to the Owner as fixed and liquidated damages, and not as a penalty, the sum set out in the 'Instructions to Bidders' of these contract documents for each calendar day until the work is completed and accepted, and the Contractor and his Surety shall be liable for the amount thereof; \* \* \*"

"2–11: *Date of Completion*: This contract must be completed in one hundred twenty (120) weather working days. For each day that any work shall remain uncompleted after the 120 weather working days has expired, the sum of Fifty Dollars ($50.00) per weather working day shall be deducted from any money due the Contractor, not as a penalty but as liquidated damages and added expense for engineering services. \* \* \*"

"Section 4—*Contract*

" \* \* \*

"5. That in the event any of the provisions of this contract are violated by the Contractor or by any of his subcontractors, the Owner may serve written notice upon the Contractor and the surety of its intention to terminate such contract, such notices to contain the reasons for such intention to terminate the contract, and, unless within ten (10) days after the serving of such notice upon the Contractor such violation shall cease and

satisfactory arrangement for correction be made, the contract shall, upon the expiration of said ten (10) days, cease and terminate. In the event of any such termination, the Owner shall immediately serve notice thereof upon the surety, shall have the right to take over and perform the contract provided, however, that if the surety does not commence performance thereof within 30 days from the date of the mailing to such surety of notice of termination, the Owner may take over the work and prosecute the same to completion by contract for the account of and at the expense of the Contractor, and the Contractor and his Surety shall be liable to the Owner for any excess cost occasioned the Owner thereby, and in such event the Owner may take possession of and utilize in completing the work, such materials, appliances, and plant as may be on the site of the work and necessary therefor."

Some explanation of the court's overall award is essential to an understanding of our disposition of this issue. The court awarded damages for remedial work by another contractor, additional engineering fees and expenses of reactivating the old plant, as well as liquidated damages. Findings were also made, and are not now attacked, the thrust of which is that Lyster abandoned the job.

Specifically as to liquidated damages, the court found:

"38. That under the terms of its contract with the Town of Las Vegas, Louis Lyster, General Contractor, Inc., was to have completed the work called for thereunder within 120 weather working days, and the sum of $50.00 per weather working day beyond said period was agreed and stipulated to as liquidated damages. Said period of 120 days had elapsed prior to December 20, 1961."

"39. That there is due to the Town by Louis Lyster, General Contractor, Inc., the sum of $10,000.00 representing liquidated damages for 200 days at $50.00 a day."

Gruschus v. C. R. Davis Contracting Company, 75 N.M. 649, 409 P.2d 500 (1965) held, regarding liquidated damage provisions, that:

"* * * [S]uch a clause will only be denied when the stipulated amount is so extravagant or disproportionate as to show fraud, mistake or oppression."

We find no such factors present. Apart from the fact that the contract price alone was over $109,000.00, the depriving of a municipality with a population of several thousand people of its sewage treatment facility is a serious matter. The amount of the agreed liquidated damages per day does not seem excessive, and does not approach being "extravagant or disproportionate."

■ Lyster says that "an award of actual damages is a bar to the awarding of liquidated damages." This is the converse of the holding in Gruschus that liquidated damages precluded the award of "actual" damages under the circumstances of that case. The prime significance of Gruschus is in its holding that:

"There would seem to be no sound reason why persons competent and free to contract may not agree on the amount of liquidated damages for failure to complete a contract within a specified time to the same extent as they may contract on any other subject, or why their agreement in this respect, when fairly and understandingly entered into, with a view to just compensation for an anticipated loss, should not be enforced. * * *"

The court in Gruschus considered and applied the contract before it. We must do the same here. There is no occasion to construe a contract the meaning of which is clear, or to resort to rules of construction. It is only necessary to read and apply it. It is not claimed this contract is ambiguous.

When this is done several things are clear. First, the facts are easily distinguishable from those considered in Gruschus. There, only damages for delay were sought. Here, various other items of damages were suffered. Secondly, in Gruschus the contract was completed, whereas here, according to findings which were not attacked, it was abandoned. Finally, under the contract in this case, the operation of the liquidated damage clause is restricted solely to delay. It is only for delay that liquidated damages may here be recovered, and under the holding in Gruschus only liquidated damages may be recovered for delay.

Yet the contract itself provides for other damages, and others have been suffered. The vice to be guarded against is a duplication of damages. The damages here, other than the liquidated damages, are unrelated to delay and duplication has not occurred. We therefore fail to understand why the court's award of the other damages which are unrelated to delay should preclude the award of liquidated damages which is predicated solely upon delay. City was not required to elect to pursue one type of damages or the other because the provisions are not mutually exclusive.

■ We are not, however, satisfied with the amount of liquidated damages awarded.

Text writers and courts have arrived at various conclusions as to whether, and how much, liquidated damages should be awarded when the contractor has abandoned the project. 5 Williston, on Contracts, § 785 (3rd ed. 1961); 5 Corbin, on Contracts, § 1072 (1964). We are spared the necessity of determining this issue. It is not argued, and neither party tendered evidence or requested findings on the length of time reasonably required for completion, or any other factual feature which would bring the award within any of the various rules of law applicable to such fact situations. But we are nevertheless at a loss to determine how the court arrived at the 200 days specified in its Finding 39.

One feature glares forth which makes us unwilling to approve the award of liquidated damages in its present form. On May 22, 1962, City gave notice to Lyster that unless the latter took certain action (which did not occur), the contract would be terminated ten days after receipt of the letter.

This was doubtless done pursuant to Section 4(5) of the contract. Obviously the City cannot in one breath terminate the contract and in the next claim damages which thereafter accrue to it under its terms on a day-by-day basis.

The trial court is directed to set aside its judgment insofar as liquidated damages against Lyster are concerned, determine the number of days for which City is entitled to liquidated damages up to the effective date of the City's termination of the contract, and fix the amount of liquidated damages accordingly.

We come now to the appeal of Scanlon, whose basic assertion is that he was not a party from the time of filing the first amended complaint. In order to resolve this question, an analysis of the pleadings, notable for their complexity, is required.

It is clear that Scanlon lost the lawsuit. Judgment was entered against him, but even here the difficulties commence. He is referred to in the judgment as a "third party defendant." Presumably because of this expression of descriptio personae, he takes the position that the judgment was rendered on the third-party complaint, upon which his primary attack is waged. It is true that he had been a third-party defendant, more or less, but he was several other things as well including, at one stage, defendant, cross-defendant in an action by his co-third-party defendant Lyster, and cross-defendant in a cross-claim (mislabeled counterclaim and hereinafter so called) filed by his co-defendant, the City.

Originally, as "T. E. Scanlon & Associates, a partnership," Scanlon was a co-defendant with the City. He answered as "T. E. Scanlon, a sole proprietorship doing business as T. E. Scanlon & Associates." Mr. Lyster, individually, was then plaintiff, but in the amended complaint, the Lyster Corporation was plaintiff and Scanlon was omitted as a defendant. The amended complaint and answer seem to be regarded by all as having replaced the original complaint and answer, notwithstanding the change of parties plaintiff and defendant. No one

contends otherwise and we hasten to accept this premise.

The amended answer is noteworthy in paragraph 7 and the prayer. The former states:

"7. This defendant affirms all of the allegations and averments of all of its prior pleadings herein insofar as the same may be applicable to the first amended complaint herein, meaning and intending hereby to stand by the issues as the same have heretofore existed herein as shown by the prior pleadings herein."

The City prayed, inter alia, that upon trial of the issues, "the Court render judgment in favor of this defendant on its third party complaint and its counter claim against the defendant" Scanlon.

We now come to the so-called third-party complaint. At an early stage, City moved for leave to file a third-party complaint against Lyster and U.S.F.&G., neither of whom were theretofore parties. The motion was granted, and leave was given to file such a complaint against those parties, naming them.

When the third-party complaint was filed, it purportedly included Scanlon as a third-party defendant in the guise of "Scanlon-Erwin & Associates, a partnership." Scanlon asserts or assumes that this is the pleading upon which judgment was rendered against Scanlon, and vigorously claims that the procedures utilized were jurisdictionally defective because Scanlon was already a party under another nome de guerre; that he was wrongfully deprived of his right to be heard on whether the motion should be granted; that the order did not authorize the filing of the pleading against him, etc. To which we would add that the third-party complaint alleges no wrongful act or omission on the part of Scanlon. It does not even cast aspersions upon him. It is only possible to see that he was apparently intended to be a third-party defendant by reference to the caption. The attack upon the third-party

complaint by Scanlon constitutes the first principal limb of his argument.

The only response which the third-party complaint elicited from Scanlon was a motion to dismiss for failure to state a claim upon which relief could be granted. The motion appears to have considerable merit and no disposition has been made of it. The motion, however, does not seem to have seized the attention of the parties and we will pass on to other matters.

The next pleading filed against Scanlon was Lyster's cross-claim. We have already spoken of this in regard to Lyster's appeal and determined it to be without present significance.

Finally, there is the counterclaim by the City against its then co-defendant Scanlon. Obviously it is a cross-claim, and while it says it is a claim against "Defendant, T. E. Scanlon & Associates," the cause of action is alleged against "Scanlon, Erwin & Associates," but both entities are apparently just Scanlon. We are not disposed to boggle at such discrepancies. Scanlon replied to the peading.

The parties do not give much attention to the counterclaim. Scanlon finds it convenient to ignore it, other than to mention that it is mislabeled. The City does not seem to rely on it as a means of sustaining the judgment, merely mentioning it in passing as an indication of jurisdiction. We take a more serious view of it.

At the commencement of the trial, the pleadings were reviewed and discussed prior to commencement of the testimony, during the course of which the counterclaim and Scanlon's reply to it were discussed.

Since the filing of the amended complaint, Scanlon has consistently taken the position that he was not a party. Although he was present at the trial, his presence was in response to a subpoena and he was unattended by counsel. He was called as an adverse witness by Lyster and as an expert witness by the City. Also, his pretrial deposition was introduced. During the trial Scanlon, with protestations of amazement

that he should be thought a party, questioned a witness. In a colloquy between the court and Scanlon, the latter was told that the cross-claim was being tried.

In its decision, the court found that the case had been tried on the issues presented by all of the pleadings we have mentioned, and possibly others, specifically including the counterclaim and Scanlon's answer to it.

As we have said, Scanlon's primary attack is upon the third-party complaint. We agree with Scanlon that, for the reasons to which we have referred, not the least of which is that it was not at issue, the third-party complaint can not constitute the basis of the award against Scanlon.

■ Scanlon asserts paragraph 7 of the amended answer, quoted supra, could not breathe new life into prior pleadings which had expired, as he says the third-party complaint had done. We agree. Paragraph 7, in the framework of these pleadings, which we trust are unlikely to be duplicated, was so general and its effect so vague, indefinite and uncertain, that it was ineffectual to revive or otherwise affect prior pleadings. 2A Moore's Federal Practice, Par. 10.05. Which, of course, is another way of saying that we do not understand it.

■ Scanlon's other principal contention is that the filing of the amended complaint by Lyster "erased the board clean," apparently obliterating all prior pleadings. This is based on the opinion and mandate in the first appeal, insofar as it stated that a new trial should be granted:

"* * * on the issues raised by the pleadings, either as they now exist, or may be hereafter amended."

Scanlon asserts it had to be one way or the other. We do not agree. A reading of the mandate together with the opinion, insofar as it relates to pleadings, parties and issues, convinces us that it was intended to accord each party a right to amend, rather than to Lyster to so make the election for all. We are prepared only to hold that the amended complaint and answer superseded the original com-

plaint and answer, thereby eliminating Scanlon as a defendant as to the complaint, but not affecting his status otherwise.

This leaves us to deal with the counterclaim, which we consider to be the crucial issue. Prior to the first appeal, the issues of the counterclaim were joined by the parties to it and fully formulated. We are furnished with neither authority nor any logical reason as to why the City was obligated to replead the same claim in the form of a third-party complaint or whatever following the amended complaint. Why should a change in the parties and relief sought in the complaint extinguish a pre-existing counterclaim and reply, over which the court had theretofore had undoubted and unquestioned jurisdiction? We have found no such authority and no such logical reasons occur to us. We fail to see why the situation is changed or affected by Scanlon having been dropped as a defendant in the amended complaint. The authorities we have found indicate the counterclaim survived the amendment. 3 Moore's Federal Practice, Par. 13.36 at page 98, states:

"* * * [I]f the original bill or claim in connection with which the cross-claim arises is dismissed for lack of jurisdiction, it would seem, on analogy to cases concerning counterclaims, that the dismissal carries with it the cross-claim, *unless the latter is supported by independent jurisdictional grounds.*" (Emphasis supplied.)

Thus, in Frommeyer v. L. & R. Construction Co., 139 F.Supp. 579 (D.N.J. 1956), there were properly filed cross-claims followed by a dismissal of the complaint as to the co-party defendant against whom the cross-claims were filed The court, in noting that "the aim of procedural rules is facilitation not frustration of decisions on the merits," answered the contention that the cross-claims were required to be repleaded as third-party complaints. It said that the cross-claims were proper when filed and continued to be so:

"Once proper, they did not cease to be so because the party to whom they were addressed subsequently ceased to be a co-party."

See also Picou v. Rimrock Tidelands, Inc., 29 F.R.D. 188 (E.D.La. 1962). It is unlikely that any problem in this case could have been solved by more pleadings.

The amended answer, in its prayer, made clear recovery was sought on the counterclaim. The court considered it was trying the issues of the counterclaim. We are not convinced that judgment was rendered against Scanlon on the third-party complaint rather than the counterclaim. The judgment does not specify what pleadings formed the basis for the award against him. While he was designated as a third-party defendant in the judgment, he could have been designated by a number of other descriptions with equal facility. Such minutiae should not be the basis for striking down judgments. The trial court's findings mesh with the issues of the counterclaim and fully sustain the determination of Scanlon's liability.

A judgment carries with it a presumption of validity. State for Use and Benefit of Dar Tile Co. v. Glens Falls Insurance Company, 78 N.M. 435, 432 P.2d 400 (1967). In Ellis v. Parmer, (76 N.M. 626, 417 P.2d 436 (1966), Oman, J., stated:

"On appeal all reasonable presumptions will be indulged to support the decision and judgment of the trial court and the proceedings in that court."

We are thus willing to presume that the judgment against Scanlon was predicated on the counterclaim and it is affirmed except as to the amount of damages.

An adjustment is also required in the amount of damages awarded against Scanlon. Firstly, an award of $10,000.00 of liquidated damages was predicated on the contract between Lyster and the City. Scanlon was not a party to that contract. He asserts and the City concedes that the award against him should be diminished by the amount of any liquidated damages.

Similarly, Scanlon claims that he should have been credited with an additional $1,182.00 representing the value of con-

tracted work not completed by Lyster, and which was taken into account in fixing the award against Lyster. The correctness of this position was conceded by the City at oral argument and the award against Scanlon should accordingly be further diminished by this amount.

Finally, Scanlon says that he should be allowed a credit of $12,442.53, which was allowed to Lyster but not Scanlon. This figure represented the unpaid balance on the contract between Lyster and the City. The City does not attack the credit to Lyster but resists granting it to Scanlon.

We cannot agree with Scanlon's position. The damages flowed equally from Scanlon's negligence and we see no impropriety in the award. Moreover, the credit contended for by Scanlon is akin to the liquidated damages in that it was granted to Lyster as a result of the contractual relationship between it and the City—a contract to which Scanlon was not a party.

Scanlon points out that the City has not been damaged in the amount of the credit and, in effect, is holding those funds. True, but in like effect, they are funds of Lyster. Such was doubtless the theory of the credit to it. The credit relates to issues between Lyster and the City, in which Scanlon plays no part and as to which he is entitled to no benefit.

The district court is directed to set its judgment aside and to enter judgment in favor of the City against Lyster and Scanlon, making the adjustments in the amount of damages awarded that we have specified and taking care to avoid granting to the City any duplicate recovery.

It is so ordered.

COMPTON, C. J., and OMAN, J., concur.