**WHITTAKER CORPORATION, as successor in interest to Lee Telecommunications Corp., Plaintiff,**

v.

**CALSPAN CORPORATION, Calspan Field Services, Inc. and Dynaspan Services, Co., Defendants.**

**No. 90–CV–279A.**

United States District Court,
W.D. New York.

Dec. 30, 1992.

---

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, for plaintiff; H. Kenneth Schroeder, Jr., of counsel.

Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, for defendants; Peter D. Braun, of counsel.

ARCARA, District Judge.

This Court, having carefully reviewed Magistrate Judge Leslie G. Foschio's Report and Recommendation of December 4, 1992, as well as the pleadings and materials submitted by both parties; and no objections having been timely filed to the Magistrate Judge's Report in the above-captioned matter, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), the Magistrate Judge's Report and Recommendation is accepted in its entirety.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is denied; defendants' motion for summary judgment as to defendant Calspan Corporation is granted; and, defendants' motion for summary judgment as to defendant Calspan Field Services, Inc. is granted.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This matter was referred to the undersigned by the Hon. Richard J. Arcara, on December 30, 1991, for report and recommendation on any dispositive motions. The action is presently before the undersigned on Plaintiff's motion for summary judgment, dated February 14, 1992, and Defendants' cross-motion for summary judgment, dated March 16, 1992.

### BACKGROUND

Plaintiff, Whittaker Corporation ("Whittaker"), a Delaware corporation with a principal place of business in California, filed this diversity action on March 15, 1990. Defendant, Calspan Corporation ("Calspan"), is an Ohio corporation with a principal place of business in New York. Defendant, Calspan Field Services, Inc. ("CFS"), a wholly owned subsidiary of Calspan, is a New York corporation. Defendant Dynaspan Services Company ("Dynaspan") is a joint venture, located in New Mexico, formed by Calspan, through CFS, and DynCorp, a non-party to this action.

Plaintiff raised two causes of action in its complaint. Each cause of action relates to the alleged breach of a contract between Whittaker and Dynaspan. In response, Defendants asserted two counterclaims against Whittaker for breach of contract and for breach of warranty.

Following discovery, which was extended twice by motion, Whittaker, on February 14, 1992, filed a motion for summary judgment against Defendants on both causes of action, on the issues of liability and damages. On March 16, 1992, Defendants filed a cross-motion for summary judgment against Whittaker, dismissing all Whittaker's claims as against Calspan and CFS. Oral argument on the motion was held on April 23, 1992, and supplemental memoranda were filed in May, 1992 by the parties.

For the reasons as set forth below, Plaintiff's motion for summary judgment should be DENIED; Defendants' cross-motion for summary judgment should be GRANTED.

### FACTS

On May 4, 1987, Plaintiff Whittaker entered into a contract with Defendant Dynaspan in which Whittaker was obligated to provide Dynaspan with computer hardware, computer software, consulting services, and other deliverables for a military project at the White Sands Missile Range in New Mexico.[1] Specifically, Whittaker's computer technology was to enable a radar

---

1. This fact statement is taken from the papers filed by counsel relative to the motions filed in this case and certain representations made during oral argument.

control unit to track and communicate all data it detected to a computer for further processing as part of a defense system. For these services, Dynaspan agreed to pay $742,785. At the time of this contract, Dynaspan had a government contract with the United States Army to provide consulting and engineering services on the military project. A second contract, or a modification of the first contract,[2] was entered into between Whittaker and Dynaspan on August 14, 1987 for the provision of computer hardware, software, and consulting services in conjunction with the same project for a price of $368,903. The items provided for in the first contract became known as the Forward Area Air Defense System ("FAADS") Data Link ("FDL"). The subsequent contract provided for the development of a FAADS Instrumentation Data Link ("FIDL"). The contract was awarded on a sole-source basis, *i.e.*, without competitive bidding, as the government believed only Whittaker capable of producing the deliverables within the time period it required. Dynaspan's contract with the government was a cost-plus contract under which Dynaspan would be reimbursed for its actual costs in completing the contract, plus an agreed amount of profit.

Pursuant to the terms of the contract, Whittaker was required to execute a Systems Acceptance Test of the FDL system by July 31, 1987, with delivery to Dynaspan by August 10, 1987. Included in the contract was a liquidated damages provision which provided that, if Whittaker failed to deliver the hardware, software, and supplies, or to perform the services within the time frame specified in the contract, Whittaker, in place of actual damages, would pay to Dynaspan a sum of $1000 per day for each calendar day of delay of performance. See, Article IX of Contract, Exhibit A, Plaintiff's Notice of Motion, dated February 14, 1992.

After repeated failures to pass agreed upon acceptance tests and to provide other important deliverables, including source codes, the FDL system was delivered by Whittaker and conditionally accepted by Dynaspan 197 days after the scheduled date for delivery and acceptance. As a result, Dynaspan withheld as payment to Whittaker $197,000 of the first contract price, based on a calculation of 197 days at $1000 per day. The period of 197 days is the difference between the August 10, 1987 contract delivery date and February 24, 1988, the date Dynaspan conditionally accepted the FDL system. See, Affidavit of Rebecca L. Williams, Contract Administrator for Dynaspan, dated March 11, 1992, at page 6. The Whittaker software did not pass required on-site field tests until June 2, 1988. See, Affidavit of Rebecca L. Williams, at page 6. As to the second contract or modification, Dynaspan contends that the FIDL system which was provided did not have the capacity pursuant to the specifications provided for in the contract, and operated at only a thirty percent capacity level. Specifically, the contract called for a system with a one hundred track capacity, and at the time of the conditional acceptance in 1988, the system only functioned at a thirty to thirty-two track capacity. See, Affidavit of Rebecca L. Williams, at page 7. Accordingly, Dynaspan withheld $68,500 from the payment due to Whittaker for the FIDL system. Prior to initiation of this action, a proposed settlement offer of $57,083 was offered to resolve any and all disputes surrounding the FIDL system, however, Plaintiff rejected the offer and initiated this lawsuit. Except for the disputed amount of $197,000 and $68,500, Whittaker has been paid in full by Dynaspan pursuant to the terms of the contract.

As to Defendants Calspan and CFS, affidavits provided to the court indicate that CFS was merged into Calspan, effective January 1, 1985, prior to the execution of the contracts at issue. See, Affidavit of David M. Main, Counsel for Arvin Industries, Inc., parent corporation of Calspan, dated March 5, 1992. Neither Calspan nor CFS was a party to the contracts in issue in

---

**2.** Whittaker claims that there are two separate contracts; Dynaspan contends that there is only one contract in existence, with a subsequent modification. For purposes of these motions, the distinction is irrelevant.

this action. See, Affidavit of David M. Main, dated March 5, 1992.

## DISCUSSION

### 1. *Choice of Law*

Plaintiff contends that New York law applies to this action as, since this court has diversity jurisdiction, it is obligated to apply the law of New York as the forum state. Defendants, however, argue that, as a federal court sitting in a diversity case, the court should apply New York's choice-of-law rules, and, under these rules, the significant contacts favor New Mexico. Therefore, Defendants contend, New Mexico law should apply to Whittaker's summary judgment motion. In the alternative, Defendants argue that federal common law as to government contracts should apply. Whittaker objects to the application of New Mexico or federal common law as Whittaker believes the application of New York law would bar enforcement of the subject liquidated damages clause as a penalty.

In a diversity action such as the instant action, because New York is the forum state, New York's choice-of-law rules will determine which state's substantive law should apply. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Machleder v. Diaz*, 801 F.2d 46 (2d Cir. 1986). The question is, therefore, not what law the federal court would apply, "but what law the New York courts would apply." *O'Connor v. Lee–Hy Paving Corp.*, 579 F.2d 194, 205 (2d Cir.1978); *cert. denied*, 439 U.S. 1034, 99 S.Ct. 638, 58 L.Ed.2d 696 (1978). Under New York's choice-of-law rule, the law of the jurisdiction having the most significant contacts and the greatest interest in the litigation will be applied. See, *Index Fund, Inc. v. Insurance Company of North America*, 580 F.2d 1158 (2d Cir.1978); *Schultz v. Boy Scouts of America*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985); *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972).

New York courts apply a "paramount interest" test to choice-of-law issues involving contractual disputes. *Hutner v. Greene*, 734 F.2d 896, 899 (2d Cir.1984); *Warshay v. Guinness PLC*, 750 F.Supp. 628, 632 (S.D.N.Y.1990), *aff'd*, 935 F.2d 1278 (2d Cir.1991). Under such a test, "the law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the facts or contacts which obtain significance in defining state interests are those which relate to the purpose of the particular law in conflict." *Hutner, supra*, 734 F.2d at 899 (quoting, *Intercontinental Planning Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576, 582 (1969)). Relevant contacts include the place of incorporation, the principal place of business, the place where the contract was made, the place of negotiation of the contract, and the place of the significant activities and performance of the contract. See, *Hutner, supra*, at 899–900.

In this case, Defendant Calspan has a principal place of business in New York, and Defendant CFS is a New York corporation. Defendant Dynaspan is a joint venture between Calspan and DynCorp, which is located at Holloman Air Force Base in New Mexico. Dynaspan is also located at the air base. See, Affidavit of Rebecca L. Williams, at page 2–3. The contract at issue in this action was between Dynaspan and Whittaker, a Delaware corporation with a principal place of business in California. Although the deliverables were developed at Whittaker's facility in California, the contract was to be performed in New Mexico where the government would take delivery and where its testing capability was located. Negotiations for the contract took place in New Mexico and Arkansas, and the contract was awarded by Dynaspan to Whittaker in New Mexico. See, Affidavit of Rebecca L. Williams, at pages 2–3. See also, Exhibit A to Plaintiff's Motion for Summary Judgment, Paragraph B. The computer hardware, software, and consulting services which were the subject of the contract were to be supplied to the air base in New Mexico. See, Affidavit of Rebecca L. Williams, at page 3.

Based on the above, it appears that, aside from the place of incorporation and princi-

pal places of business of the parties, and the place where the computer hardware and software was produced, all of the relevant contacts relating to this contract were located in New Mexico. Specifically, all significant activities relating to this contract took place in New Mexico. See, *Hutner, supra,* at 899.

Defendants also claim that, alternatively, federal common law should apply as this litigation arises under the construction of a government defense contract.

In diversity cases involving contract disputes, the federal courts usually apply state law. See generally, *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Similarly, state law ordinarily controls the construction of contracts between government contractors and their subcontractors. See, 1A Moore's Federal Practice (1980) § 0.321. However, where the federal interest in the subcontract is sufficient, federal law may control. See, *American Pipe & Steel Corp. v. Firestone Tire & Rubber Co.,* 292 F.2d 640, 644 (9th Cir.1961). Whether state or federal law applies to disputes brought under the court's diversity jurisdiction depends upon the degree to which the outcome will affect the interests of the federal government. *Bank of America National Trust & Savings v. Parnell,* 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956). See also, *Grinnell Fire Protection v. Regents of University of California,* 554 F.Supp. 495, 497 (N.D.Calif.1982).

In this case, Dynaspan argues that the federal government had a great interest in the subcontract between Whittaker and Dynaspan since the computer hardware and software purchased by Dynaspan from Whittaker was ultimately to be used and paid for by the United States government. Further, Dynaspan contends, if the liquidated damages clause is not enforced, as this was a cost-plus contract, the government will be required to reimburse Dynaspan for its additional payments to Whittaker, along with already having paid Dynaspan $235,921.54 for Dynaspan's out-of-pocket costs as a result of Whittaker's breach, and will be damaged to that extent.

While some courts have applied federal common law to contracts such as the one at issue in this case, (see, *United States v. Taylor,* 333 F.2d 633 (5th Cir.1964)) (court applied federal law citing the direct supervisory role that the government played with respect to the contractor and subcontractor); *Grinnell Fire Protection, supra.* (court applied federal law as it was understood by the parties that "very close collaboration" would be required between the defendant and the government with respect to the program at issue which related to national defense and security)), the contract in this case does not appear to have a substantial federal interest, great enough to override the normal choice of law considerations in contract disputes. Therefore, the court concludes that federal common law should not apply, and, under the contact analysis discussed above, the law of New Mexico should apply. Although it is arguable that the result would be the same under either New York or New Mexico law, to the extent that New Mexico law provides a more lenient standard for determining the validity of liquidated damage clauses, the choice-of-law issue is material and, therefore, New Mexico law should be applied to Whittaker's summary judgment motion.

2. *Whittaker's motion for summary judgment*

Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. See, *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991).

Whittaker claims that Dynaspan has withheld payment to Whittaker of $197,000 from the FDL contract, and $68,500 from the FIDL contract. Whittaker states that these contracts were completed and the contracted for items were accepted by Dynaspan and the United States Army for use

at the White Sands Missile Range in New Mexico, and that, therefore, payment in full is due and payable. Dynaspan contends that, as to the FDL contract, delivery and conditional acceptance of the contracted for items was 197 days late, and, accordingly, the liquidated damages clause contained in the contract of $1000 per day for each day that these items were late applies, resulting in a damage amount of $197,000. As to the FIDL contract, Dynaspan claims that the final items provided pursuant to the contract did not meet the contract specifications, and therefore, payment of the remaining $68,500 should not be made. Whittaker, for purposes of this motion, concedes that delivery and acceptance of the FDL system was 197 days late, however, Whittaker argues that Dynaspan has been compensated in full by the government for any costs resulting from the delays and, consequently, has suffered no damages, and that, therefore, enforcement of the liquidated damages clause would result in Whittaker paying a penalty. Dynaspan claims that it has suffered damages of $235,921.54 which represent out-of-pocket costs associated with the delay, and that, accordingly, the liquidated damages clause is both reasonable and enforceable. See, Affidavit of Rebecca L. Williams, at page 9. Dynaspan does state that these out-of-pocket costs were reimbursed to it by the United States government, however, it also states that the government, which supports Dynaspan's enforcement of the liquidated damage provision, would be harmed if the liquidated damages provision is not enforced, as the government would be required, under their contract with Dynaspan, to reimburse Dynaspan for the $197,000 which would be paid to Whittaker. See, Defendant's Memorandum of Law in Opposition, dated March 16, 1992, at page 18; Affidavit of Rebecca L. Williams, at page 8.

a.) First Cause of Action—Breach of Contract (Liquidated Damages)

In their first cause of action, Whittaker seeks payment of $197,000 which was withheld by Dynaspan. Dynaspan has refused to make payment, claiming that this amount represents, as an off-set, liquidated damages owing to them pursuant to the contract which provides for liquidated damages in the event of a delay.

Under New Mexico law, the standard for determining the reasonableness of a liquidated damages provision in a contract is whether the amount of liquidated damages are in an amount which will provide for a loss or injury which might reasonably have been anticipated at the time the contract was made, and not the actual amount of a plaintiff's loss or injury following the execution of the contract. *Construction Contracting & Management, Inc. v. McConnell*, 815 P.2d 1161, 1167 (N.M.1991); *Gruschus v. C.R. Davis Contracting Co., Inc.*, 409 P.2d 500, 504 (N.M.1965). If the liquidated damages clause is one which properly provides for liquidated damages, the clause fixes any recovery for damages for breach at that amount, and the injured party can recover no more, even though his actual damages may exceed the agreed sum, however, his recovery cannot be diminished by showing that his actual loss was less than the amount of liquidated damages. *Gruschus, supra*, at 504. See also, *Construction Contracting & Management, Inc., supra*, at 1167 (where a contract between a contractor and a subcontractor contains a liquidated delay damage clause, the agreed upon figure governs the amount of recovery, and the fact that actual damages either exceed or fall short of the stipulated amount is not relevant). Generally, enforcement of a liquidated damages clause will only be denied when the stipulated amount is so extravagant or is so disproportionate as to show fraud, mistake, or oppression. *Gruschus, supra*, at 504. In a liquidated damages clause, the "vice to be guarded against is a duplication of damages." See, *Louis Lyster General Contractor, Inc. v. City of Las Vegas, N.M.*, 83 N.M. 138, 489 P.2d 646, 654 (1971). However, if liquidated damages are awarded solely for delay, actual damages may still be awarded for other damages unrelated to delay. *Louis Lyster General Contractor, supra*, at 654.

In this case, the liquidated damages clause contained in the contract at Article IX(1) provided for liquidated damages, in place of actual damages, of $1000 for each calendar day of delay. However, pursuant to Article IX(3) of the contract, the contractor would be not charged for liquidated damages if the period of delay arose for reasons beyond the contractor's control. Whittaker has conceded, for purposes of this motion, that there were at least 197 days of unexcused delay. Whittaker claims that Dynaspan is not entitled to liquidated damages, stating that the amount of these damages is not reasonable in view of the actual harm and additional costs actually incurred by Dynaspan, and that, therefore, the clause operates as a penalty, and should not be enforced under either New Mexico or New York law. Dynaspan contends, however, that the additional costs incurred were $235,921.54, ultimately paid for by the government, and that, therefore, the liquidated damages clause is reasonable. Further, while Whittaker states that the liquidated damages clause was incorporated into the contract solely as an incentive for Whittaker to timely complete the contract, Dynaspan claims that the government insisted on the liquidated damages clause as a protection against unreasonable delays.

 After carefully reviewing the record presented by the parties, it appears that, even assuming, *arguendo*, that Whittaker fully performed its duties under the contract, a genuine material issue of fact remains as to the reasonableness of the liquidated damages clause, the reasons for which the liquidated damages clause was incorporated into the contract, and whether Whittaker's actions or Dynaspan's actions constituted a breach of their agreement. If Whittaker can establish that the clause was unreasonable, and is so disproportionate to the amount of actual damages as to show fraud, mistake, or oppression, it may

be entitled to a judgment. On the other hand, if the liquidated damages clause was entered into as a bargained for item, including, as asserted by Dynaspan, the prior approval of the government, and the amount of damages is not extravagant or disproportionate to the amount of actual damages, under New Mexico law, Dynaspan may prevail. Under either alternative, however, both parties must resolve these issues of fact at trial before judgment may be entered. It is a question of fact as to the extent to which a party may be entitled to damages for delay and the reasonableness of the delay. See, *Construction Contracting & Management, Inc.*, *supra*, at 1168. See also, *Templin v. Mountain Bell Telephone Co.*, 643 P.2d 263 (N.M.Ct.App. 1982) (summary judgment order reversed where genuine issues of fact existed as to liquidated damages). Accordingly, Whittaker's motion for summary judgment on the first cause of action for $197,000 should be DENIED.[3] In so concluding, the court does not intend to foreclose Defendants from offering evidence at trial on the numerous other issues of material fact that they have also argued preclude summary judgment as requested by Whittaker.

**b.) Second Cause of Action—Breach of Contract (Failure to Pay)**

 In Whittaker's second cause of action, Whittaker seeks payment of $68,500 which represents the amount withheld by Dynaspan on the contract for the FIDL system. Dynaspan refuses to pay this amount, claiming that the delivered software did not meet the contract specifications. In the alternative, Whittaker seeks $57,083 on this claim, stating that a memorandum prepared by Dynaspan concluded that $57,083 was the actual amount due and payable to Whittaker for the completed FIDL system project, taking into consideration the different specifications. Dynaspan claims, however, that this memoran-

---

**3.** The court notes that Whittaker's motion appears to be based on the premise that notwithstanding an admitted and material breach in a government cost-plus contract, absent a reasonable liquidated damages clause, a breaching subcontractor should be entitled to full payment by the government's contractor, as the contractor itself is not damaged. This seems inconsistent with the reality that, despite an obligation to pay its contractor, the government does not receive the full benefits of the contract.

dum was prepared for settlement purposes only, prior to the institution of this lawsuit by Whittaker, and that, once Whittaker began the lawsuit, the propositions discussed in the memorandum were moot. For the purposes of this motion only, Whittaker agrees that the FIDL system did not fully meet the contract specifications.

After review of the record provided by the parties, the court concludes that there is a question of material fact as to what amount is due and owing to Whittaker from Dynaspan for the FIDL system. Whittaker sued for the full amount of $68,-500, and is willing to accept $57,083. Dynaspan was willing to settle for $57,083, but is now unwilling to do so in light of the instant litigation. It is a material question of fact as to what the actual variances from the contract specifications were, and how they subsequently affected the actual value of the FIDL system as finally delivered. Therefore, Whittaker's motion for summary judgment on the second cause of action should be DENIED.

### 3. Defendants' cross-motion for summary judgment

Defendants filed a cross-motion for summary judgment, seeking Calspan's and CFS' dismissal from this action on the ground that these entities were not parties to the contract between Whittaker and Dynaspan, and that, absent any allegations that Dynaspan, as a joint venture of Calspan and DynCorp, is in danger of being insolvent, Calspan could have no liability for any judgment incurred by Dynaspan. Whittaker claims that Calspan provided technical assistance and consulting services in connection with the contracts at issue, and, therefore, was actively involved in the project and is a proper party.

Defendants rely on New York law for their argument; Whittaker, while commenting that it is ironic that Defendants seek to rely on New York law for their cross-motion while vigorously arguing for the application of New Mexico law on Whittaker's motion, do not appear to contend that New York law should not apply to the construction of this joint venture. The

court, while noting that the result may be the same under either New York or New Mexico law, will apply New York law as there does not appear to be a serious conflict of law issue present on this issue. See, *Chandler v. H.E. Yerkes & Associates*, 784 F.Supp. 119, 123 n. 2 (S.D.N.Y. 1992) (citing, *Tehran–Berkeley Civil & Environmental Engineers v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir.1989)) (court noted that as parties relied on New York law, court would apply New York law "under the principle that implied consent to use the forum's law is sufficient to establish choice of law").

In support of their cross-motion, Defendants argue that a partner to a joint venture cannot be held liable for the joint venture's obligations, absent a showing that the joint venture is insolvent and unable to pay its debt. Whittaker maintains that, in his denial of Defendants' motion for change of venue, dated July 25, 1990, Judge Arcara implicitly made a finding that Calspan should be involved in this action, and that, therefore, this is the law of the case. In addition, Whittaker states that, if Dynaspan is found to be insolvent, Calspan, along with its joint venture partner, DynCorp, would be liable for the amount of Dynaspan's damages. The court notes that no allegation of insolvency on the part of Dynaspan was set forth in the complaint filed by Whittaker.

While Whittaker claims that Calspan controlled the activities of Dynaspan, both sides have agreed that DynCorp owns 60% of Dynaspan and Calspan owns 40% of Dynaspan. Certainly, there was some degree of control over Dynaspan by Calspan by virtue of ownership. The copies of answers to interrogatories and depositions provided to the court establish that employees of Calspan were providing technical expertise to the project along with Dynaspan, and were very much involved with the project. However, the fact remains that a prerequisite to individual liability on a joint partnership or joint venture obligation is that "resort may be had against them only if the joint or partnership property is insufficient to pay the

[partnership] debts or it appears that there can be no effective remedy without resort to individual property." *Tehran–Berkeley Civil & Environmental Engineers, supra,* at 243 (citing, *Wisnouse v. Telsey,* 367 F.Supp. 855, 859 (S.D.N.Y.1973)). Further, a complaint that fails to allege a partnership is insolvent and unable to pay its debts is insufficient to state a claim for breach of contract against the partners as individuals. *Tehran–Berkeley Civil & Environmental Engineers, supra,* at 243 (citing, *Pine Plains Lumber Corp. v. Messina,* 78 A.D.2d 271, 435 N.Y.S.2d 381, 384 (3d Dep't 1981)). Therefore, Defendants' cross-motion for summary judgment as to Calspan should be GRANTED.

Additionally, there is no evidence that CFS participated in this contract in any way. Both sides to this action agree that CFS ceased to be an entity on January 1, 1985 and was merged with Calspan. There has been no allegation of any action in this matter by CFS, except that it is alleged that Dynaspan was originally formed as a joint venture by Calspan through CFS. As CFS ceased to exist prior to the inception of the contract at issue, there is no basis on which to hold CFS liable for any damages pursuant to a breach of such contract. Accordingly, the court recommends that CFS be dismissed from the action, and that Defendants' motion for summary judgment as to CFS be GRANTED.

### CONCLUSION

Based on the foregoing discussion, I recommend that Plaintiff Whittaker's motion for summary judgment be DENIED; Defendants' motion for summary judgment as to Defendant Calspan be GRANTED; and, Defendants' motion for summary judgment as to Defendant CFS be GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 30(a).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.